United States of America v. Robert H. Rush                                          May 12, 2003

```
                                                                                    1
 1                  IN THE UNITED STATES DISTRICT COURT
 2                  FOR THE MIDDLE DISTRICT OF ALABAMA
 3                            EASTERN DIVISION
 4
 5   UNITED STATES OF AMERICA
 6       vs.                              CR. NO. 02-93-E
 7   ROBERT H. RUSH,
 8             Defendant.
 9
10
11                      *  *  *  *  *  *  *  *  *  *  *
12                   EXCERPT OF JURY TRIAL PROCEEDINGS
13                              PLEA COLLOQUY
14                      *  *  *  *  *  *  *  *  *  *  *
15         BEFORE THE HONORABLE REGINALD C. LINDSAY, UNITED
16   STATES DISTRICT JUDGE, and a jury, at Montgomery, Alabama, on
17   Monday, May 12, 2003:
18   APPEARANCES:
19   FOR THE GOVERNMENT:    Ms. Tommie Brown Hardwick
                            Assistant United States Attorney
20                          OFFICE OF THE UNITED STATES ATTORNEY
                            One Court Square, Suite 201
21                          Montgomery, Alabama   36104
22   FOR THE DEFENDANT:     Mr. David B. Byrne, Jr.
                            Attorney at Law
23                          CAPELL & HOWARD
                            150 South Perry Street
24                          Montgomery, Alabama   36104
25          Proceedings reported stenographically;
                transcript produced by computer.
```

2

1  (The following excerpt of proceedings was heard before the
2  Honorable Reginald C. Lindsay, United States District
3  Judge, and a jury, at Montgomery, Alabama, on Monday, May
4  12, 2003:)
5  (Jury not present)
6  (Defendant present)
7      THE COURT: Let's get started, then.
8      MR. BYRNE: Do you want us to approach with the
9  defendant to the courtroom deputy's desk?
10     THE COURT: I can do it right there.
11     MR. BYRNE: All right, sir.
12     THE COURT: If that's all right with you.
13     MR. BYRNE: Yes, sir.
14     MS. HARDWICK: That's fine, Your Honor.
15     THE COURT: Okay. Now, again, I -- at any point, if
16  you have a different procedure, let me know so that I can do
17  what is most familiar. Even though it may not be familiar to
18  me, you can tell me -- you can guide me through this.
19     MS. HARDWICK: Yes, sir, Your Honor.
20     THE COURT: All right. I'm going to have Mr. Rush
21  sworn, please.
22     (The defendant is sworn)
23     THE COURT: Would you please state your full --
24  Mr. Rush, can you come over to that microphone over there?
25  Actually, why don't just stand right there at that podium. That

3

1  would be good.
2      Would you give me your full name, please?
3      THE DEFENDANT: Robert Hayward Rush, Jr.
4      THE COURT: Mr. Rush, how old are you?
5      THE DEFENDANT: 52.
6      THE COURT: Are you a citizen of the United States?
7      THE DEFENDANT: Yes, sir.
8      THE COURT: How far did you go in school, sir?
9      THE DEFENDANT: I have a master's degree, Your Honor.
10     THE COURT: Have you been treated recently for any
11  psychological, psychiatric, or emotional problem?
12     THE DEFENDANT: No, Your Honor.
13     THE COURT: Pardon?
14     THE DEFENDANT: No, Your Honor.
15     THE COURT: Have you been treated for any addiction of
16  any kind?
17     THE DEFENDANT: No, Your Honor.
18     THE COURT: Are you now under the influence of any
19  drug, any medication, or any alcoholic beverage of any kind?
20     THE DEFENDANT: No, sir.
21     THE COURT: Have you received a copy of the indictment,
22  that is to say, the written statement of charges against you?
23     THE DEFENDANT: Yes, Your Honor.
24     THE COURT: Have you had an opportunity fully to
25  discuss those charges and this case in general with Mr. Byrne as

4

1  your counsel?
2      THE DEFENDANT: Yes, Your Honor.
3      THE COURT: Are you fully satisfied with Mr. Byrne as
4  your counsel generally in this case?
5      THE DEFENDANT: Yes, Your Honor, I am.
6      THE COURT: Are you satisfied in particular with the
7  advice he has given you regarding whether you should plead
8  guilty in this case?
9      THE DEFENDANT: Yes, sir, I am.
10     THE COURT: You were -- now, Mr. Rush, I understand the
11  following things about your pleading or agreeing with the
12  government concerning your plea. First, that you would plead
13  guilty to count one of the indictment charging you with
14  manufacturing of a controlled substance; second, that the
15  government will drop count two, that is, the count that charges
16  you with a firearm offense, possession of a firearm during and
17  in relation and in furtherance of a drug trafficking offense;
18  that you will retain your right to seek further review of
19  rulings that have been made earlier in this case with respect to
20  certain motions to suppress evidence; that the government,
21  having already withdrawn the criminal forfeiture claim in this
22  case, will nevertheless pursue in a civil matter forfeiture of
23  your property in connection with this drug offense.
24     That is what I understand to be your agreement with the
25  government. Have I -- is that what you understand that

5

1  agreement to be?
2      THE DEFENDANT: Yes, Your Honor. That's my
3  understanding.
4      THE COURT: Is there anything else I've left out of the
5  agreement, Counsel?
6      MR. BYRNE: No, Your Honor. We -- it's the intent of
7  both sides, I believe, to allow us to enter this plea pursuant
8  to Rule 11(a)(2), therefore making it conditional, as Your Honor
9  indicates.
10     THE COURT: That's right. That's what I understand it
11  is.
12     Yes, ma'am.
13     MS. HARDWICK: And that is correct, Your Honor. In
14  addition, the government did state on the record that it is not
15  agreeing that Mr. Byrne has preserved any issues for appeal.
16     THE COURT: I understand. But Mr. Byrne and Mr. Rush
17  take the position -- have the right to take a position contrary
18  to that.
19     MS. HARDWICK: Exactly.
20     THE COURT: And they do take a position contrary to
21  that.
22     MS. HARDWICK: Yes, Your Honor.
23     THE COURT: All right. Now, apart from this, the
24  things I've just stated and we've just discussed, Mr. Rush, is
25  there any other promise made to you by the government in order

### 6

1 to get you to plead guilty in this case?
2     THE DEFENDANT: No, Your Honor.
3     THE COURT: Did you fully discuss all the things that I
4 just described to you with Mr. Byrne before you decided whether
5 you would enter a plea of guilty?
6     THE DEFENDANT: Yes, Your Honor, I did.
7     THE COURT: The government has made no recommendation
8 as to punishment in this case. Do you understand -- as to what
9 punishment it will seek of you -- from me with respect to you in
10 this case. Do you understand that?
11     THE DEFENDANT: Yes, Your Honor. I've received no
12 promises.
13     THE COURT: Okay. Has anyone attempted in any way to
14 force you to plead guilty, Mr. Rush?
15     THE DEFENDANT: No, Your Honor.
16     THE COURT: Are you pleading guilty of your own free
17 will because you are in fact guilty of the offense charged in
18 count one?
19     THE DEFENDANT: Yes, Your Honor.
20     THE COURT: Do you understand that if you plead guilty
21 this afternoon and I accept your plea, you will be pleading
22 guilty to a felony offense? And by a felony offense, I mean an
23 offense for which a statute of the United States prescribes
24 punishment that includes a term of imprisonment greater than one
25 year. Do you understand that you are pleading guilty to a

### 7

1 felony offense?
2     THE DEFENDANT: Yes, Your Honor, I do.
3     THE COURT: Do you understand also that if you plead
4 guilty to a felony offense and I accept that plea, that you will
5 be adjudicated or determined to be guilty -- that's without a
6 trial -- and that when you leave this room this afternoon, you
7 will leave this room convicted of a felony offense? Do you
8 understand that?
9     THE DEFENDANT: Yes, sir.
10     THE COURT: Do you understand also that with a
11 conviction of a felony offense you may lose certain of your
12 valuable civil rights like the right to vote, the right to serve
13 on a jury, the right to possess a firearm? Do you understand
14 that?
15     THE DEFENDANT: Yes, Your Honor.
16     THE COURT: In addition, you face certain mandatory
17 maximum and minimum penalties that I will describe for you and
18 that you heard us discussing a few minutes ago.
19     First of all, you face a mandatory minimum of five
20 years in prison and a maximum of 40 years in prison, a maximum
21 fine of $2 million, a minimum period of supervised release of
22 four years and a maximum of life of supervised release, and a
23 $100 special assessment. Those are the penalties.
24     Let me explain what I mean by supervised release,
25 because that may not be obvious to you. If you are sentenced to

### 8

1 a term of imprisonment, Mr. Rush, you will serve that term. You
2 should know that there is no parole in the federal system, so
3 you will serve that term. Now, you may get the benefit of
4 certain good-time credits; but otherwise, you'll serve the full
5 term of imprisonment imposed upon you. At the time of your
6 sentencing, the sentencing judge will impose certain conditions
7 for a period of time after you have served that term. That
8 period of time under which you will be subject to those
9 conditions is called supervised release, because during the
10 period of time set by the sentencing judge after your release
11 you will be supervised by the probation department --
12 probation. So you will serve the term of imprisonment, and then
13 you will serve some period of time under supervision of the
14 probation officer's office even after you are released. And you
15 have to comply with those conditions that are set at the time of
16 your sentencing. And if you fail to comply with those
17 conditions of your supervised release, you can be reimprisoned
18 with the full term of supervised release set at the time of your
19 sentence.
20     Do you understand so far what I've said, Mr. Rush?
21     THE DEFENDANT: Yes, sir, I believe I do. I'm not --
22 is the period of supervised release going in addition to the
23 sentence?
24     THE COURT: It is -- it is the sentence. The sentence
25 will be as follows. You will get a term of imprisonment --

### 9

1     THE DEFENDANT: Yes, sir.
2     THE COURT: -- and you will also get a term of
3 supervised release which in this case is a minimum of four
4 years. So let's say that you were -- let's say -- just by way
5 of example, not -- this is not binding any sentence.
6     THE DEFENDANT: Yes, sir.
7     THE COURT: But let's say the term of imprisonment is
8 five years, and the sentencing judge sets a period of supervised
9 release for you. You serve that term of five years minus any
10 good-time credits, and then you will begin to serve a term --
11 when I say serve the term, that may not be the right way to put
12 it, but you will be on supervised release even after you are
13 released from the term of imprisonment. If the term is four
14 years, you'll be under the supervision of the probation office
15 for four years, and you'll have to abide by the conditions for
16 those four years. Do you follow me?
17     THE DEFENDANT: Yes, sir. I understand.
18     THE COURT: Okay. Now, and by me -- I should have told
19 you this before we started. If there's anything you don't
20 understand, please feel free to ask me. And if you want to
21 consult with Mr. Byrne, let me know that so I can give you the
22 opportunity to consult with Mr. Byrne. Let me also tell you
23 that you should not answer any question or respond to anything
24 you don't understand. We aren't in a hurry here, and we'll take
25 the time to make sure you understand everything that's

### Page 10

1  happening. Do you follow me?
2       THE DEFENDANT: Okay. Thank you, Your Honor.
3       THE COURT: Any other question you want to ask me
4  before we go on?
5       THE DEFENDANT: No, sir. Not at this time.
6       THE COURT: All right. Now, you should understand that
7  the actual sentence that will be imposed on you will be
8  determined in accordance with guidelines established by the
9  United States Sentencing Commission for judges to follow in
10 sentencing defendants in criminal cases. Now, I don't know how
11 the guidelines will apply to your case, and I won't be able to
12 tell how the guidelines will apply to your case until I get a
13 presentence report from the probation office. But I need to
14 know, have you and Mr. Byrne talked about the guidelines and how
15 they might apply to your case?
16      MR. BYRNE: Sentencing guidelines.
17      THE DEFENDANT: Yes, sir, we have.
18      THE COURT: The sentencing guidelines.
19      THE DEFENDANT: Yes, sir.
20      THE COURT: Well, understand that he may have given you
21 an estimate of how the guidelines apply to your case, but that
22 estimate may -- you should understand that that's just an
23 estimate, and the estimate may be different from the estimate
24 made by the -- or the determination made by the sentencing
25 judge. And therefore, the sentence may be different from the

### Page 11

1  estimate Mr. Byrne has given you. Do you understand that?
2       THE DEFENDANT: Yes, Your Honor.
3       THE COURT: You should understand that once the
4  guideline range is determined, the sentencing judge has
5  authority to depart from the range. He or she may go higher
6  than the range, something called an upward departure, or lower
7  than what the guidelines provide for under what is called a
8  downward departure. Do you understand that?
9       THE DEFENDANT: Yes, Your Honor.
10      THE COURT: Do you understand, sir, that you, under
11 certain circumstances, and the government, under certain
12 circumstances, have the right to appeal any sentence I impose on
13 you or the sentencing judge imposes? Do you understand that?
14      THE DEFENDANT: Yes, Your Honor.
15      THE COURT: Now, I want to -- before we go any further,
16 I want to tell you about the rights that you may be giving up by
17 pleading guilty. First of all, you do not have to plead guilty
18 to this offense. You may plead not guilty. If you plead not
19 guilty, Mr. Rush, you are entitled to a trial by jury in this
20 case drawn from the -- drawn at random from the population
21 living in the area covered by the Middle District of Alabama.
22      At your trial, you will be presumed innocent. You
23 don't have to prove your innocence; rather, the government has
24 to prove your guilt. The government's burden is to prove your
25 guilt by proof beyond a reasonable doubt. At your trial, you

### Page 12

1  would have the right to counsel. If you couldn't afford
2  counsel, counsel would be appointed to represent you. You would
3  have the right to see and hear all the witnesses who testify
4  against you and have those witnesses cross-examined in your
5  behalf. You would also have the right to put on a case, to put
6  on evidence of your own, including testifying on your own if you
7  wanted to. On the other hand, if you chose not to testify, if
8  you chose not to put on any case, if I were trying the case or
9  the sentencing judge trying the case would instruct the jury
10 that they could not hold it against you or draw any inference
11 adverse to you because you chose not to testify or you chose not
12 to put on any case at all. Those are your rights.
13      If you plead guilty today, all those rights that I've
14 just told you about and any rights that you have that are
15 associated with a trial in this court will have been given up or
16 waived by you. Do you understand that?
17      THE DEFENDANT: Yes, Your Honor.
18      THE COURT: Now, the government's burden, as I told
19 you, was to prove your guilt of the offense that you're charged
20 with by proof beyond a reasonable doubt. Let me explain what
21 that means in more specific terms. Each offense against the
22 United States is made up of what we call elements. The elements
23 are the parts of the offense the government has to prove beyond
24 a reasonable doubt. And each element has to be proven beyond a
25 reasonable doubt in order to convict you of that offense of

### Page 13

1  manufacturing a controlled substance.
2       Let me be specific about this offense. You're charged
3  with a violation of Title 21 of the United States Code, Section
4  841(a)(1). You're charged with manufacturing a controlled
5  substance. The government has to prove first that you did in
6  fact manufacture a controlled substance. And by manufacturing,
7  the statute means the production of a controlled substance
8  including the planting, cultivation, growing, or harvesting of a
9  controlled substance. The government then has to prove that you
10 knowingly manufactured this substance knowing that it was a
11 controlled substance. And when I say knowingly, that means the
12 government has to prove that you acted voluntarily and
13 intentionally, not because of ignorance, mistake, accident, or
14 carelessness. Do you follow me so far, Mr. Rush?
15      THE DEFENDANT: Yes, Your Honor.
16      THE COURT: Do you have any questions you wish to ask
17 me at this stage?
18      THE DEFENDANT: Not at this time, Your Honor.
19      THE COURT: Now, at this time, Mr. Byrne, this is where
20 I would ordinarily ask the government to make a proffer of what
21 the government's case would be if the case were to go to trial
22 so I can make a finding whether this plea is supported by an
23 independent basis in fact. So if you want to inquire of
24 Mr. Rush to establish that, I would give you the opportunity to
25 do that.

## Page 14

1  MR. BYRNE: May I inquire, Your Honor?
2  THE COURT: Yes.
3  ROBERT HAYWARD RUSH, JR., the witness, having been
4  duly sworn, testified, as follows:
5              EXAMINATION
6  BY MR. BYRNE:
7  Q. Again, please state your name.
8  A. Robert Hayward Rush, Jr.
9  Q. Where do you reside?
10 A. 5535 Lee Road 66, Auburn, Alabama.
11 Q. How long have you resided at that address?
12 A. For 17 years.
13 Q. On May 29, 2002, did you reside at that location?
14 A. Yes, I did.
15 Q. Is that physically within the Middle District of Alabama?
16 A. Yes, it is.
17 Q. In the spring of 2002, did you plant 100 or more marijuana
18 plants?
19 A. I planted the seeds. Yes.
20 Q. Okay. Excuse me. And did you place the seeds in the pots?
21 A. That's correct.
22 Q. Okay. And did you nurture those by watering them?
23 A. Yes, I did.
24 Q. And on or by May 29, had they reached the height of eight to
25 12 inches?

## Page 15

1  A. Yes, sir.
2  Q. Up to the point that they were seized on or about May 29th,
3  had they been in the curtilage of your residence?
4  A. Yes.
5  Q. Immediately outside the back door?
6  A. Yes, sir.
7  Q. Did you know at the time you planted the seeds that the
8  federal law prohibited the possession and/or manufacture of the
9  controlled substance marijuana?
10 A. I -- I knew something of it.
11 Q. Did you know it was against the law?
12 A. I knew you could get arrested for it.
13 Q. And was it your intent when the plants got large enough to
14 then take them from the smaller pots and put them -- transplant
15 them into a larger pot?
16 A. Yes, sir. The female plants.
17 Q. Okay. And was that for the purpose of manufacturing a
18 quantity of marijuana for use or ingestion?
19 A. Yes, sir.
20 THE COURT: Was that ingestion? Ingestion?
21 MR. BYRNE: I was trying to say ingest, and I probably
22 slurred the word, Your Honor.
23 THE COURT: I just wanted to make sure I heard
24 ingestion as opposed to injection.
25 MR. BYRNE: No, sir. Ingestion is what I'm saying.

## Page 16

1  THE COURT: All right.
2  MR. BYRNE: Your Honor, I believe that establishes a
3  factual basis.
4  THE COURT: All right. Thank you very much.
5  Ms. Hardwick, do you have anything you want to add to
6  this?
7  MS. HARDWICK: Your Honor, the -- I have one concern.
8  He indicated that he planted a hundred marijuana plants for his
9  ingestion?
10 THE COURT: For ingestion, I think was the question.
11 MS. HARDWICK: For ingestion?
12 MR. BYRNE: For ingestion.
13 MS. HARDWICK: Your Honor, we'd like to get some
14 clarification on that.
15 Are you saying that you intended to use all of the
16 marijuana plants yourself?
17 THE COURT: Well, before you do that, he's not charged
18 with anything more than manufacturing.
19 MS. HARDWICK: Right.
20 THE COURT: I'm not so sure that he needs to --
21 frankly, Mr. Byrne can advise him, but I'm not sure he needs to
22 answer any question other than that he manufactured -- any -- to
23 give any evidence other than he manufactured a hundred plants.
24 MS. HARDWICK: I understand, Your Honor.
25 THE COURT: I'm not sure he needs to say anything. And

## Page 17

1  I, frankly, would say he probably shouldn't answer anything
2  further than -- more than that.
3  MR. BYRNE: Your Honor, I respectfully suggest that
4  establishes a factual basis for this charge.
5  THE COURT: All right. Ms. Hardwick, anything else?
6  MS. HARDWICK: Your Honor, one other thing is that I
7  think we have to show that he -- they were his plants and at
8  that location.
9  And do you live at 5535 Lee County Road 66 in Auburn,
10 Alabama? Was that your residence where the plants were
11 located?
12 THE DEFENDANT: 5535 Lee Road 66.
13 MS. HARDWICK: Yes.
14 THE COURT: I think he said that.
15 MS. HARDWICK: That's all.
16 THE COURT: Okay. Is there anything else, Mr. Byrne?
17 MR. BYRNE: No, Your Honor.
18 THE COURT: All right. Mr. Rush, you've been charged
19 in an indictment -- in count one of the indictment with
20 manufacturing a controlled substance. To that offense, how do
21 you plead, guilty or not guilty?
22 THE DEFENDANT: I plead guilty, Your Honor.
23 THE COURT: All right. It is my finding that in the
24 matter of United States of America versus Robert H. Rush, Jr.,
25 that Mr. Rush is fully competent and capable of entering an

                                                                18
1   informed plea, that he is aware of the nature of the charges and
2   the consequences of pleading guilty to that -- to the charge, a
3   charge; that he is aware of the nature of the charge and the
4   consequences of pleading guilty to that charge; and that the
5   plea of guilty that he has entered is a knowing and voluntary
6   plea supported by an independent basis in fact containing each
7   of the essential elements of the offense. I therefore accept
8   the plea.
9       I understand the plea is tendered pursuant to Rule
10  11(a) -- Rule 11(a) --
11      MR. BYRNE: Two, Your Honor.
12      THE COURT: (a)(2)?
13      MR. BYRNE: Yes, sir.
14      THE COURT: -- of the Federal Rules of Criminal
15  Procedure, and the government has consented to a conditional
16  plea in accordance with that rule. I therefore accept the plea
17  and adjudge Mr. Rush guilty as he has been charged of a
18  violation of Title 21, United States Code, Section 841(a)(1),
19  specifically of manufacturing a controlled substance; namely,
20  marijuana.
21      Mr. Rush, let me tell you -- I'm sorry.
22      Mr. Byrne, were you going to say something?
23      MR. BYRNE: I apologize to the Court. I'm probably
24  running ahead. We would, at the appropriate time, respectfully
25  request that the defendant's terms and conditions of release be

                                                                19
1   continued pending sentencing.
2       THE COURT: All right. I'm going to set at least for
3   the moment July 30th, as we have discussed, as the date of
4   sentencing. I have another disposition scheduled that day for
5   ten o'clock Central Daylight Time. I will do this sentencing at
6   eleven o'clock Central Daylight Time unless you hear from me.
7   That means that my -- it will be for me 12 Eastern Time, but
8   here, eleven o'clock.
9       And let me tell you what will next happen. Between now
10  and the date I've just given you, a probation officer will begin
11  to prepare a presentence report, Mr. Rush. You will be asked to
12  submit to an interview for that report, and Mr. Byrne may be
13  present at the time of that interview. Sometime between now and
14  July 30th, you'll get a copy of the report. And I urge you
15  carefully to go over that report. Go over it and discuss it
16  carefully with Mr. Byrne. A typical report has a lot -- a great
17  deal of information in it, personal information about your
18  family circumstances, your educational background, whether you
19  have any substance abuse problem, whether you have any criminal
20  history, things of that nature that would be relevant to
21  sentencing. And it's important that that report be accurate and
22  complete from your point of view. So when you get a copy, it's
23  important that you go over it very carefully, because it's
24  something the sentencing judge will rely on in determining what
25  sentence to impose on you.

                                                                20
1       Now, in Massachusetts I -- we do it this way. I assume
2   that we do it this way here -- the same way will occur here,
3   that you have an opportunity, with your lawyer, to communicate
4   with the probation officer about mistakes or errors that may be
5   in the report. Is that right? Do you do that?
6       MR. BYRNE: Yes, Your Honor.
7       MS. HARDWICK: Yes, sir.
8       THE COURT: Do you have that opportunity? And if you
9   find anything in that report that is inaccurate or incomplete or
10  otherwise should be changed, you be sure that Mr. Byrne lets the
11  probation officer know that. And if you object to the report,
12  to any parts of the report, the probation officer will listen.
13  If the officer agrees, the officer may change the report to
14  reflect your objections to it. But even if the officer does not
15  change the report, you have an opportunity at the time of
16  sentencing through Mr. Byrne to bring anything to my attention
17  that may be inaccurate or incomplete about that report to the
18  extent that that affects the disposition of your case.
19      At the time of sentencing, the government will make a
20  presentation to the sentencing judge, including a recommendation
21  about the sentence to be imposed upon you. Mr. Byrne will have
22  an opportunity to speak for you and make a presentation, the
23  factors that relate to your circumstances and the factors he
24  thinks are important for the sentencing judge to know about the
25  sentence he would recommend that the judge impose on you. And

                                                                21
1   you have a right, Mr. Rush, before sentence is imposed to speak
2   and say whatever you think is appropriate for the sentencing
3   judge to know before sentence is imposed. Are there any
4   question -- do you have any questions for me?
5       THE DEFENDANT: No, Your Honor, I don't.
6       THE COURT: Okay. Mr. Byrne has moved that the
7   conditions of Mr. Rush's release pending trial be continued
8   pending sentence. Does the government have any objection?
9       MS. HARDWICK: No, Your Honor.
10      THE COURT: All right. I see that the -- I don't know
11  what those conditions are. I have an order, which I will sign,
12  that they be continued. Do you remember what -- do you know
13  what the conditions were, just so you'll remember?
14      MR. BYRNE: Your Honor, I think that I can recite
15  them. He will report as ordered, that he will not leave the
16  state of Alabama without notifying his probation officer, that
17  he will maintain employment and/or continue his education until
18  further order, and that he will continue to receive random drug
19  screens at the behest and at the discretion of his pretrial
20  services officer. Those are as I recall them to be. He signed
21  a recognizance bond, Your Honor, and I frankly do not remember
22  the amount. I want to say it was $25,000.
23      THE COURT: All right. And it probably -- there's
24  probably also a condition that you maintain your residence where
25  you now live and that you surrender any passport that you have.

22

1  THE DEFENDANT: I've surrendered my passport. And I'm
2  to notify them if I change address.
3      THE COURT: Okay. And to notify probation if you are
4  arrested.
5      THE DEFENDANT: Yes, sir.
6      MR. BYRNE: Yes, sir.
7      THE DEFENDANT: Any contact with a law enforcement
8  officer.
9      THE COURT: All right. You'll be continued -- your
10 release will be continued on those terms, Mr. Rush. Now, I tell
11 everybody this, so don't be offended if I tell you. It is a
12 separate offense against the United States to fail to appear at
13 the time of your sentencing. In some cases it's a ten-year
14 maximum sentence; in some cases, a 15-year maximum sentence. As
15 I say, I tell everybody who's being released. But I also say
16 when I release somebody that if I didn't think you would show
17 up, I wouldn't release you. So I'm releasing you, but I tell
18 you that because I think you need to know what the consequences
19 are of not showing up.
20     THE DEFENDANT: I appreciate that, Your Honor.
21     THE COURT: Is there anything else we need to do?
22     MR. BYRNE: No, Your Honor.
23     MS. HARDWICK: No, Your Honor.
24     THE COURT: All right. I will sign this order.
25 And what's today, the 12th?

23

1      THE CLERK: Yes, sir.
2      THE COURT: Okay. I think we're done for the day
3  here. Thank you very much.
4      THE DEFENDANT: Thank you, Your Honor.
5  (End of excerpt)
6              * * * * * * * * * *
7          COURT REPORTER'S CERTIFICATE
8      I certify that the foregoing is a correct transcript
9  from the record of proceedings in the above-entitled matter.
10     This 23rd day of May, 2003.
11
12                    [signature]
                RISA L. ENTREKIN, RDR, CRR
13              Official Court Reporter
14