```
 1              UNITED STATES DISTRICT COURT
                MIDDLE DISTRICT OF ALABAMA
 2

 3     _____

       UNITED STATES OF AMERICA,
 4                    Plaintiff,

 5     V.                      Criminal Action No. 02-00147-001

 6     ROBERT H. RUSH,         July 30, 2003, 12:04 p.m.
                    Defendant.  Boston, Massachusetts
 7     _____

 8

 9

10

11

12            TRANSCRIPT OF SENTENCING DAY 1

13       BEFORE THE HONORABLE REGINALD C. LINDSAY

14            UNITED STATES DISTRICT COURT

15         JOHN J. MOAKLEY U.S. COURTHOUSE

16             ONE COURTHOUSE WAY

17              BOSTON, MA  02210

18

19

20

21

22            DEBRA M. JOYCE, RPR, CRR
                Official Court Reporter
23       John J. Moakley U.S. Courthouse
            1 Courthouse Way, Room 5204
24              Boston, MA  02210
                 617-737-4410
25
```

1   APPEARANCES:

2   FOR THE GOVERNMENT:

3   TOMMIE BROWN HARDWICK, ESQ.
    JOHN HARMON, ESQ.
4   Assistant United States Attorneys
    Office of the United States Attorney
5   One Court Square, Suite 202
    P.O. Box 197
6   Montgomery, AL   36101-0197
    334-223-7280
7

8   FOR THE DEFENDANT:

9   DAVID B. BYRNE, JR., ESQ.
    150 South Perry Street
10  Montgomery, al   36104
    334-241-8000
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2                    (The following proceedings were held in open court

3     via teleconference before the Honorable Reginald C. Lindsay,

4     United States District Judge, United States District Court,

5     District of Massachusetts, at the John J. Moakley United States

6     Courthouse, 1 Courthouse Way, Boston, Massachusetts, on July

7     30, 2003.

8                    The defendant, Robert H. Rush, is present with

9     counsel.   The Assistant United States Attorney is present.)

10                   THE CLERK:   This is criminal action 02-00147,

11    United States v. Robert Rush.

12                   Will counsel please identify themselves?

13                   MS. HARDWICK:   Your Honor, I'm sorry, I did not

14    hear what your -- what Madam Clerk said.

15                   THE CLERK:   Could you identify yourselves for the

16    record?

17                   MR. BYRNE:   My name is David B. Byrne, Jr., I

18    represent the accused, Robert Rush, Jr.   Present in Court is

19    Mr. Robert H. Rush, Jr.

20                   THE COURT:   And the government's present?

21                   MS. HARDWICK:   On behalf of the government, Tommie

22    Brown Hardwick.   We are ready to proceed, your Honor.

23                   MR. HARMON:   Your Honor, also for the government --

24    excuse me.

25                   THE COURT:   Yes, go ahead.

1          MR. HARMON: Also for the government, your Honor,

2     John Harmon.

3          THE COURT: Okay. And is the probation officer

4     present?

5          PROBATION OFFICER: Yes, Judge, Terrence Marshall,

6     probation.

7          THE COURT: Yes, that's right, that's the same name

8     I have here. Thanks very much, Mr. Marshall.

9          Counsel, I take it you can both hear and see me?

10    Can you both hear and see me?

11         MS. HARDWICK: The government can hear and see your

12    Honor.

13         MR. BYRNE: Yes, your Honor.

14         THE COURT: Okay. This is now the second

15    proceeding I've held by video conference. Before today I had

16    not held any proceeding by video conference. I can hardly say

17    that I'm a veteran, but if there are any technical

18    difficulties, you'll understand.

19         Let me tell you who is present here with me. My

20    courtroom deputy, whom you heard, is Lisa Hourihan. She opened

21    this proceeding. And her name is spelled H-o-u-r-i-h-a-n,

22    that's Lisa Hourihan. Our court reporter is Debra, D-e-b-r-a,

23    Joyce, J-o-y-c-e. She's making a transcript of this

24    proceeding. And in the event you need to be in touch with her,

25    let me tell you that she is at the courthouse at the John

1    Joseph Moakley, M-o-a-k-l-e-y, United States Courthouse, Suite

2    5204, 1 Courthouse Way, Boston, Massachusetts 02210.  Her

3    telephone number is 617-737-4410.

4              I don't know if you were in the courtroom when I

5    did the earlier proceeding, but I told the lawyers in that

6    proceeding that I intend to proceed as I usually proceed in

7    matters of disposition, and if there are differences in what I

8    do that are critical to you, I'd like you to bring those to my

9    attention so that I can conform with your practice.

10             So let me say we are now here for the disposition

11   of the matter of United States of America v. Robert H. Rush.

12   Mr. Rush pleaded guilty to manufacturing marijuana in violation

13   of Title 21 United States Code section 841(b)(1)(B), a class B

14   felony.

15             Mr. Byrne, have you reviewed the presentence

16   report?

17             MR. BYRNE:  Your Honor, we have reviewed it and

18   both the initial the final presentence report were given to us

19   in a timely manner.

20             THE COURT:  And have you gone over it then with

21   Mr. Rush?

22             MR. BYRNE:  Yes, your Honor, I have.

23             THE COURT:  And, Ms. Brown Hardwick, have you

24   reviewed the presentence report as well?

25             MS. HARDWICK:  Yes, your Honor, I have.

```
1                    THE COURT:  All right.

2                    MS. HARDWICK:  And it's Hardwick.

3                    THE COURT:  What did I say?

4                    MS. HARDWICK:  Brown Hardwick.  It's just Hardwick.

5                    THE COURT:  Just Hardwick.  Thank you very much.

6                    MS. HARDWICK:  Yes.

7                    THE COURT:  Thank you very much.

8                    All right.  Ms. Hardwick, let me tell you how I

9    will proceed.  I know that there are a number of objections to

10   the presentence report.  What I'd like to do is simply state --

11   at least as an initial matter, state for the record what the

12   probation officer has determined, and then I will hear any

13   objections you have to what the probation officer has

14   determined.

15                    The probation officer has calculated the offense

16   level using the 2002 edition of the guidelines manual, that's

17   the November 2002 guidelines manual.

18                    The probation officer has determined -- and I know

19   this is a matter of controversy -- that the weight of the

20   marijuana is 733.21 grams, and has, however, determined that

21   that weight is less than the guidelines provision, which

22   assigns to marijuana plants the number of 100 grams per plant.

23   And on that basis, the probation officer has determined that

24   the guideline attribution applies and that the total weight

25   applicable to this offense is 11,800 grams or 11.8 kilograms,
```

1    and on that basis has determined that the appropriate offense

2    level is level 16.

3         The probation officer has also made an adjustment

4    for a specific offense characteristic, and I know this also is

5    in controversy.  The officer has added two levels on the basis

6    that a dangerous weapon was possessed in connection with the

7    underlying offense.

8         The probation officer has given a two-level

9    downward adjustment to the total offense level for acceptance

10   of responsibility.  That, too, is in controversy.  The

11   defendant argues that there should be a three-level adjustment.

12        On the basis of the calculations by the probation

13   officer, the offense level is level 16.

14        Turning now to the criminal history category, the

15   probation officer has determined that Mr. Rush has no countable

16   convictions; therefore, he has no criminal history points and

17   is in criminal history category one.

18        With an offense level 16 and criminal history

19   category one and with the mandatory minimum sentence applicable

20   in this case, the probation officer has determined that the

21   guideline provision of custody is 60 months, that there is a

22   period of supervised release of four to five years, a fine of

23   $5,000 to $2 million, and a special assessment of $100.  Those

24   are the findings of the probation officer.

25        I'd like now to go back now and take the individual

1    adjustments to the offense level and hear you on that.  Let me

2    begin, if I may, Mr. Byrne, if I -- and Ms. Hardwick, by making

3    sure I understand your argument, Mr. Byrne, regarding the use

4    of the weight.

5            Oh, by the way, I understand there's another

6    controversy in this case, because the -- and I don't know if

7    it's controversial because I haven't heard from the government

8    on this -- Mr. Byrne has argued to me that the defendant,

9    Mr. Rush, is entitled to the safety valve in this case, a

10   safety valve adjustment, which would in this case mean that the

11   mandatory minimum would not apply and I would sentence him in

12   accordance with the guidelines.

13           Now, I was about to turn to the proposition raised

14   by Mr. Byrne that the way the weight has been determined on

15   these plants is inappropriate.  I have two questions about

16   that.  The first question is, it's not clear to me that the

17   weight that was found of these plants isn't the weight of the

18   plant itself, and that what the guidelines have done is simply

19   attribute to each plant a quantity of marijuana that may be

20   derived from those plants.  That's my first concern, and I'm

21   not sure about that.

22           The second concern, and the more fundamental

23   concern I have, Mr. Byrne, is that unless the safety valve

24   applies, the question of the weight is beside the point in this

25   case, because the statute itself, 841(b)(1)(B), and I think

1    it's subsection (vii), applies the mandatory minimum five years

2    for 100 plants regardless of their weight.  And so I think the

3    weight issue really is not relevant unless I'm not sentencing

4    this defendant in accordance with the guidelines.

5            Now, I've been talking all morning, so I'll give

6    you a chance, both of you a chance to respond.  I'll start with

7    you, Mr. Byrne.

8            MR. BYRNE:  Excuse me, I apologize to the Court.

9            With regard, your Honor, to the issues that have

10   been outlined by the Court, I think they correctly frame it.

11   We concede that the 2002 edition of the sentencing guidelines

12   is the appropriate yardstick for the Court's use and for

13   counsel's use with regard to the conduct of this sentencing.

14           Your Honor, we believe that we have three or four

15   short witnesses that -- with regard to the issues of the guns

16   and the role they played in this proceeding.  We would expect

17   to call four witnesses, a total of four witnesses, possibly

18   three, to touch upon those matters.

19           The Court is correct.  I tried to assert the -- an

20   Eighth Amendment violation.  The issue, however -- and we

21   intend to introduce to the Court Sherwin Boswell, who is the

22   forensic chemist who conducted the test on this -- we intend to

23   show that what they did in this matter was to take all of the

24   contraband, including plants, roots, stems, leaves, they were

25   placed into sacks and then submitted to the forensic

1    laboratory, and the chemist in this case, Mr. Boswell,

2    determined the number of plants that were involved.  And there

3    is his description of the evidence and is slightly different,

4    and the probation officer pointed this out to the Court as a

5    slight discrepancy, which we will concede once you reach 100

6    plants it doesn't matter whether it's 118 or 116, but there is

7    a discrepancy.  The probation officer has correctly noted that

8    or footnoted that for the Court.

9                What will be proposed Defendant's Exhibit Number 4

10   will indicate the exact number of plants.  Also, another

11   quantity of controlled substance which will be at issue today

12   that was found in the gun safe was seized and is included in

13   that weight, as are a number of seeds which were in the

14   refrigerator, and, as I understand it, all of the vegetable

15   material was submitted to Mr. Boswell, and the total weight of

16   733 grams is what was submitted.

17               Exhibit 4, which I intend to introduce to the

18   Court, will show the exact number of plants that were received

19   by the Department of Forensic Sciences at the Auburn University

20   and also the total weight that is attributed to each of those

21   plants.

22               THE COURT:  But it is the weight of the plants that

23   we are talking about here.

24               MR. BYRNE:  Yes, sir.  In other words, what they

25   did is there were various sacks, as I understand it, they were

1    placed in sacks, delivered to the forensic laboratory by the

2    case agent, and Mr. Boswell receipted for them and then

3    proceeded to count the number of plants in each cardboard

4    box -- I said sack, it's a cardboard box -- and then weigh the

5    contents of that box as it literally came out of the bag, the

6    box, and put on the scale.

7              THE COURT:  All right.  Mr. Byrne -- I'm sorry, go

8    ahead.

9              MR. BYRNE:  No, sir, I interrupted the Court.  The

10   point is is that the number of plants that were tested by the

11   forensic chemist do exceed 100 in number.

12             THE COURT:  All right.  And so the point I made

13   earlier is that if they exceed a hundred, and you concede that

14   they exceed 100, then I don't know that I need to get into the

15   question, at least for present purposes, of the weight, because

16   it's the 100 plants that triggers the mandatory minimum, not

17   the -- and the weight would be relevant if I were sentencing

18   strictly under the guidelines.  That's really my point.

19             MR. BYRNE:  Your Honor, as I understand the law,

20   and as an officer of the court, I believe that the Court is

21   correct.  I don't think you get into the assessment or the

22   Eighth Amendment article -- I mean or the Eighth Amendment

23   issue or any of the weight issues unless or until this Court

24   makes a determination about whether or not the safety valve may

25   apply.

1    THE COURT: All right. Okay. That's fair enough.

2  Thank you very much, Mr. Byrne, I appreciate that.

3    Ms. Hardwick, was there anything you wanted to say

4  on this subject?

5    MS. HARDWICK: Your Honor, I would concur with the

6  Court that until we've resolved the issue of the safety valve,

7  and even before that, before we resolve the issue of whether or

8  not there should be a two-level gun enhancement under 2D1.1,

9  which of itself would necessitate disqualifying Mr. Rush for

10  the safety valve if the Court should find that 2D1.1 applies.

11  So I concur with the Court that we need to address that issue

12  before we address anything regarding the weight.

13    THE COURT: All right. Unless you have an

14  objection, let me turn to the safety valve question.

15    Mr. Byrne, you have posited that all of the

16  qualifications for the safety valve apply, and I think the --

17  and Ms. Hardwick, let me just make sure I understand you, that

18  you don't -- or do you agree that except for the gun possession

19  that the safety valve would apply? Or do you suggest that

20  there is some other reason?

21    MS. HARDWICK: Your Honor, I believe that it does

22  not apply in this case, specifically because of the 2D1.1

23  two-level gun enhancement. In addition to that, the government

24  believes that it does not apply because of the fifth prong, in

25  that Mr. Rush has not completely disclosed all of the

 1    information that he has concerning his participation in the

 2    charged and convicted offense.

 3              THE COURT:  All right.  Well, in that connection,

 4    let me hear from you, Mr. Byrne.  I'll give you a chance to

 5    respond to what Ms. Hardwick says in connection with the two

 6    prongs of the safety valve that she says will effect this case.

 7              MR. BYRNE:  Your Honor, I received government

 8    counsel's response, and in there I believe that she --

 9              THE COURT:  I'm sorry, I didn't -- I'm sorry, I

10    didn't mean to interrupt you.  I don't think I have your

11    response.  It might have been faxed up and I didn't pick it

12    up.  When did you file your response, Ms. Hardwick?

13              MS. HARDWICK:  Your Honor, I did not file it until

14    this morning.  Obviously I did not get Mr. Byrne's motion until

15    it was handed over the day before, and I provided to the

16    Court -- and it's probably somewhere in your faxed area, and I

17    apologize for the delay.

18              THE COURT:  I understand.

19              Okay.  Go ahead, Mr. Byrne.

20              MR. BYRNE:  Your Honor, in that response, basically

21    the government says that he failed to reveal that he had

22    obtained some number of marijuana seeds, one of which had --

23    was in a small container that had "Amsterdam" on the outside of

24    it, and the other one had -- it was in a small container, a

25    number of seeds that had "Mexico" on them and that that

1   indicated that that was an international drug connection.

2           We believe, your Honor, that the evidence will show

3   that those -- frankly, that first directly answered in her

4   charge that he did not fully cooperate, questions with regard

5   to where those seeds came from were not posed to Mr. Rush by

6   Captain Majors, who did the interrogation.  Our position would

7   be that he answered the questions placed to him by law

8   enforcement on the night of May 29, 2002, the date of his

9   arrest and the date of the seizures in this case.

10          We believe that the more focused issue probably for

11  the Court's determination will be whether or not in this case

12  the weapons were connected to the instant offense.  And we

13  suggest that we meet that criteria, that the weapons, and we

14  expect the evidence to be, were in a gun safe that was locked.

15  The evidence will further show that that is the only secure

16  location within that residence, that inside there was his -- a

17  number of credit cards, an amount of cash equal to $640, his

18  his parents' wills, the deed to his land, and some other

19  personal effects.  It also contained a quantity of marijuana

20  less -- or about four ounces of marijuana that was in the

21  bottom of the gun safe.  The weapons were in the gun safe.  The

22  revolver was on the top shelf.  The shoulder weapons, both

23  shotguns and rifle, were in the gun safe in an unloaded

24  condition.  I'm advised that the handgun that was on the top

25  shelf inside a holstered carrying case contained live

1   ammunition in the revolver, and it was placed there.

2          We expect the evidence to show that this is a rural

3   area, that Mr. Rush's residence, I said in my papers to the

4   Court, had been broken into twice, it's going to be actually

5   more than that; a nearby neighbor has had his home broken into,

6   and that this is a rural and a very remote area.  It is also

7   one that is fairly wild.  The roadway is known as Rattle Snake

8   Road.  The area meeting the high ground to -- that runs down to

9   the creek is known as Rattle Snake Ridge.  People use guns for

10  various reasons, among them for hunting and for personal

11  protection.  They had no role whatsoever in the offense will be

12  our contention and our submission, evidentiary submission to

13  the Court.

14          THE COURT:  All right.  Ms. Hardwick, let me just

15  hear you on this subject, because it seems to me there's going

16  to be -- unless you can tell me otherwise, there's going to be

17  a need for me to take evidence on these matters.

18          MS. HARDWICK:  Your Honor, in reference to -- I'd

19  like to try to complete the first issue, which is whether or

20  not he has fully disclosed.

21          THE COURT:  All right.

22          MS. HARDWICK:  It was not just the issue that there

23  was a film vial that contained -- that read "8/95," which is

24  the date, "Amsterdam."  The section which is 5C1.2(a)(5), which

25  is the safety valve section, it states very clearly that not

1    later than the time of the sentencing hearing, which is too

2    late at this point, the defendant has truthfully provided the

3    government all information and evidence the defendant has

4    concerning the offense or offenses, and it proceeds from

5    there.  And it also includes that was part of the same course

6    of conduct or of common scheme or plan, and it proceeds -- your

7    Honor, the government's position is that there were over 30

8    bags of seeds, bags containing marijuana seeds found in

9    Mr. Rush's residence.  Mr. Rush got those seeds from some

10   place.  By the own handwritten notations that were contained in

11   the film vials -- for the Court's understanding, these are

12   little containers to be what a 35 millimeter film would come

13   in, little containers.  There were numerous containers

14   containing those with specific dates that were handwritten with

15   various locations that the marijuana has come from dating back

16   from 1984 to -- 1984, '85 to September 20, 2006.  From

17   Mr. Rush's own statement, he acknowledges that he had been

18   manufacturing marijuana for 20 -- approximately 20 years.

19              He also stated in his statement that he sells

20   marijuana, that he uses marijuana, and he sometimes gives away

21   marijuana.  The government's position, your Honor, would

22   include the fact that he would disclose information of his

23   source for the seeds, who he's been selling it to, and who he's

24   been giving it to.  That would be all the information that he

25   had in his possession at that time.

1           The fact that an officer did not ask him for that

2    specific information, your Honor, is irrelevant.  The safety

3    valve states that he must come forward and provide that

4    information.  It is his burden to prove that he has met all of

5    the five criterias that are outlined in section 5C1.2.  It is

6    not the burden of the government to show that he has met these

7    criterias.

8           The government's position is that he has not, and

9    he has not sustained his burden of showing that he's proved

10   each of the five prongs.  Particularly, he has not shown that

11   he's disclosed all the information that he has.

12          THE COURT:  Well, let me -- I haven't seen the law

13   on this question, and the question that has been raised,

14   frankly, is whether the safety valve requires that he answer

15   truthfully to -- and give truthful information in response to

16   questions or he just tells you everything he knows.

17          Now, on the basis of your presentation,

18   Ms. Hardwick, you've said that he has acknowledged selling,

19   giving away -- selling and giving away marijuana and that he

20   has been manufacturing it for 20 years and that he also

21   acknowledged that he uses marijuana.  I guess the question I

22   have that's raised by this is:  Should he know, should he, the

23   defendant, know that the government would be interested in all

24   the other things like where he got it, who he gave it to, who

25   he sold it to, if no one asks him that question?

1          I understand your point.  Your point is he should

2    tell us everything, and that means he should tell you who,

3    when, where, so on.  But the question in my mind is does he --

4    if no one seems to be interested, that is to say, no one asked

5    him, is he supposed to assume that you want to know all that?

6    That's the question, and I don't remember any law on this

7    subject.  I know what the provisions say, that he is to tell

8    you truthfully everything he knows, but it doesn't -- I guess

9    it's not clear to me who initiates getting the information.

10          Mr. Byrne, do you want to speak to that subject?

11          MR. BYRNE:  If I may, your Honor.

12          We believe that the evidence would show, your

13    Honor, that this search and seizure that resulted in the

14    seizure of more than 100 plants of marijuana, of which the

15    defendant has admitted that he cultivated in the spring of

16    2002 -- he was arrested outside of his home, his wife was

17    outside their home in handcuffs, they were both led into the

18    residence, and that's where the interrogation takes place.

19          Mr. Rush basically tells the senior officer present

20    that rather than have the officers go through and search his

21    house thoroughly in whatever numbers they might choose to, that

22    he would show them the seeds that are referenced by the

23    government.  We expect the evidence to show he, while

24    handcuffed, went over to the refrigerator and opened the

25    refrigerator and withdrew the various containers that are

1    referenced.   Those are the ones that contained the seeds.

2              With all due respect, the handwritten notations

3    would appear to be not necessarily something that the

4    government should be terribly taken with in light of the fact

5    that it would be difficult to have seeds that have been

6    germinated from a plant and exist that's dated 2006, since

7    that's three years from now.   But, more importantly, he

8    basically just opened the refrigerator, produced those items,

9    gave them to the law enforcement officers, and we believe that

10   that -- and to respond to the questions was what he was

11   required to do.

12             We understand the factual distinction.   We

13   respectfully suggest -- and if I may simply alert the Court at

14   this particular point in time with regard to the evidence that

15   we intend to produce and without interrupting counsel by

16   objection during her factual statements, your Honor -- we

17   respectfully intend to object and ask the defendant to assert

18   his Fifth Amendment privilege with regard to any other offense

19   other than the manufacture of more than 100 plants in the year

20   2002 as that may pertain to any question asked by the

21   government with regard to sale or distribution in 2002 or

22   manufacture or sale for distribution in any year prior to

23   that.   We would respectfully ask leave of the Court or put the

24   Court on notice that we intend to object to that line of

25   inquiry since what is before the Court for sentencing is the

1    manufacture of more than 100 plants of marijuana.

2              THE COURT:  I hear you, but give me that provision

3    again.  I'm having trouble finding it, the safety valve

4    provision, 5 --

5              MS. HARDWICK:  5C1.2.

6              THE COURT:  5C1.2.

7              MS. HARDWICK:  5C1.2, yes, sir.

8              THE COURT:  The problem I'm having with the last

9    comment made by Mr. Byrne is that I think that requires that

10   the defendant tell us or tell the government not only about the

11   offenses, that is, the offenses with which he's charged, but

12   other conduct that were a part of the same course of conduct or

13   of a common scheme or plan.  And the giving, selling or other

14   distribution of marijuana strikes me as -- unless you tell me

15   otherwise, at least my intuition is that's part of the same

16   course of conduct of a common scheme or plan.  And I say that

17   because we're talking about 100 plants, and it seems to me with

18   that much -- with that much marijuana and the notion that some

19   of it's been sold, some of it's been given away, and we are

20   talking about a course of conduct which is the cultivation and

21   then ultimate distribution of marijuana here.

22              So if Mr. --

23              MR. BYRNE:  Your Honor --

24              THE COURT:  I'm sorry.  If Mr. Rush asserts his

25   Fifth Amendment rights, he may have a problem also asserting

1   that he has met the fifth requirement of the safety valve.

2              MR. BYRNE:   Your Honor, with regard to the fifth

3   requirement of the safety valve, the issue with regard to use,

4   sale or distribution was the subject on the night of May 29,

5   2002 of the investigating officers' conversations with Rush.

6   In fact, the statement that he took of Rush has two addendum to

7   it, and the two addendum deal with the very issue that the

8   Court's talking about, and he has admitted, and admitted to the

9   officer at that time, that he used it and that he had sold some

10  and had given some away on May 29.

11             The purpose of the assertion of the Fifth Amendment

12  is not to further incriminate him, but, also, if I may remind

13  the Court, we have entered a conditional plea subject to trying

14  to reverse the district court's decision as to the Fourth

15  Amendment and Fifth Amendment violations of the -- that were

16  asserted in the form of pretrial motions.

17             What we want to do and what we did in that instance

18  really is to -- the magistrate judge concluded that the

19  physical evidence as well as the oral statements that were

20  taken were violated by -- they were constitutionally

21  impermissible.   The district judge, upon the government's

22  objection, reversed that, and that is what is being -- is going

23  to be the subject of an appeal to the 11th Circuit.

24             So the extent that the plea is conditional, what

25  I'm trying to do is limit the statement made, and that is

1    embodied in what was allowed or to be allowed by the district

2    court to be such that I can try to get the 11th Circuit to

3    agree with me, and that it goes out.

4          As to the other crimes in other years, we believe

5    that is not what is contemplated within the guidelines of being

6    completely truthful and coming forward when that was not the

7    subject of any interrogation.

8          Now, obviously, much of this -- when she says 20

9    years -- goes way beyond the statute of limitations.  It is not

10    a proper inquiry and we say violates both Rule 401 relevancy

11    provision, and Rule 403 of the federal rules when one applies

12    the balancing test.

13          So we respectfully assert that that's the -- we

14    have cooperated, we think, to the extent that meets the fifth

15    requirement of the safety valve.

16                THE COURT:  Let me then --

17                MR. BYRNE:  It is not --

18                THE COURT:  Go ahead.

19                MS. HARDWICK:  Your Honor, I believe I can clarify

20    one of the things that Mr. Byrne is arguing that doesn't apply.

21                THE COURT:  Before you do that, let me just tell

22    you this, that I believe that at least as to the question of

23    whether the fifth prong of the safety valve applies, there

24    isn't a factual dispute between you.  I think you agree that

25    Mr. Rush has not told the government to whom he has sold,

1    distributed or -- sold or given marijuana.  He has not told the

2    government where he got the seeds from.  I believe there's no

3    dispute between you about that, and I understand the dispute to

4    be whether he needs to tell you that, whether he is required to

5    tell you that in order to meet the fifth requirement of the

6    safety valve.  Do I have that right?

7              MS. HARDWICK:  Yes, your Honor, I believe that's a

8    fair assessment.

9              THE COURT:  Okay.

10             MS. HARDWICK:  In addition to that --

11             THE COURT:  Yes, ma'am, go ahead.

12             MS. HARDWICK:  In addition to that -- your Honor,

13   in reference to what the Court has already explained to

14   Mr. Byrne, that you believe part of it does go to the common

15   scheme, plan, and conduct, course of conduct, specifically, the

16   sentencing guideline made that provision very clear.

17             Prior to 1991, the guidelines section for the

18   safety valve read, "if a firearm or other dangerous weapon was

19   possessed during commission of the offense," that was prior to

20   1991.  However, after 1991, and, your Honor, there is a case

21   that's cited and discussed, and it's United States v. Smith, it

22   is an 11th Circuit case, it's cited at 127 F.3d 1388.  In that

23   case it says that in November 1991, the guideline was amended

24   to delete the restriction that the weapon must be possessed

25   during the offense of conviction.

1              With the same -- and I'm shifting that argument to

2    explain why he needs to tell everything.  What it did, in

3    effect, in November of 1991, the guideline was amended,

4    deleting "during the commission of the offense" to stop at just

5    "possess."  And by doing so, this amendment clarified that the

6    provisions of 1B1.3, which is relevant conduct, applied to the

7    adjustment in 2D1.1(b)(1) and 2D1.8, which is not relevant in

8    this case, and updates the list of reference offense guidelines

9    in application note three.

10             What this in effect did, was after 1991 it said

11   include relevant conduct.  By including relevant conduct, it

12   makes clear when the guideline says that he needs to provide

13   all information and evidence the defendant has concerning the

14   offense or offenses that were part of the same course of

15   conduct or common scheme or plan, the possession of the seeds,

16   the possession of additional marijuana, all of those things

17   were in the course of conduct, and it's part of relevant

18   conduct, which the amendment makes clear does apply.

19             It also applies when we discuss later the gun case,

20   but right now, your Honor, I think it makes it very clear that

21   is relevant conduct and it should have been disclosed.

22             THE COURT:  Okay.  Mr. Byrne, were you going to say

23   something else?

24             MR. BYRNE:  No, your Honor.  Other than, again, we

25   expect the evidence to show that he answered the questions put

1   to him by the senior officer and disclosed not only these seeds

2   that were in the refrigerator, but, while handcuffed, opened up

3   the combination lock of the gun safe and opened it and that's

4   where the guns were.

5           I do not want the Court to be misled, however.  I

6   believe that both for the two-level upward enhancement, as well

7   as the safety valve, the guns and the possession of the guns,

8   must be in connection with the offense.  And that's the

9   guidelines expressed provision, and we believe that the "in

10  connection with" means something that has a nexus between

11  the -- this case, the manufacturer of the 100 plants, the

12  possession of the marijuana, and the -- whether or not the

13  possession of firearms in a gun safe, that we believe will be

14  wholly unconnected to the offense.  We feel like those negate

15  the two-point enhancement and qualifies him under the safety

16  valve, or at least that's our position.

17          THE COURT:  Well, here's --

18          MR. BYRNE:  That's our position.

19          THE COURT:  Here's where I stand now.  I have

20  the -- I started out with the proposition that I -- I was

21  uncertain about whether Mr. Rush was voluntarily coming forward

22  to give information that he had.  One could argue that he

23  didn't know that he needed to provide that information.  For

24  example, if the little packets say "Amsterdam" or "Mexico," an

25  argument can be made that he did not know that he needed to

1    tell the government where that came from because he's not a law

2    enforcement officer, he doesn't know what -- whether the

3    government wants to know that information or needs to know that

4    information or that that information will be relevant to the

5    government.  There's an argument there.  But as we proceed

6    today, I understand the proposition that you made when you said

7    that Mr. Rush will assert his Fifth Amendment rights, that even

8    if he were asked that today, the guidelines say not later than

9    the sentencing hearing.  Ms. Hardwick says it's too late now,

10   but let's suppose for sake of argument it isn't too late now if

11   he were to tell her everything but if he were to -- if today

12   Ms. Hardwick were to say tell us everything, where the seeds

13   came from, who you sold it to, whom you gave it to, he would

14   decline to tell her on the ground of his Fifth Amendment right.

15             Now, I say that if he asserts that Fifth Amendment

16   right, which he has every right to do, then he will not get the

17   benefit of the safety valve, because the safety valve says that

18   he must truthfully provide to the government everything he

19   knows about the offense and any offenses that were part of the

20   same course of conduct or of a common scheme or plan.  And in a

21   real sense, he has already talked about the possibility of

22   committing other offenses, because he has told us or told the

23   United States that he sold marijuana.  So if he -- if he

24   refuses now to say more, then it seems to me the safety valve

25   will not apply to him.

1           So that's where I stand now.  I would have some

2    question about the extent to which he was aware that he needed

3    to tell the government things that were not asked of him, I

4    would have that question, but my bottom line now is that if

5    he -- I understand that if he were asked those questions now,

6    he would decline to tell, give the information.

7           MR. BYRNE:  Your Honor, what I would intend to do

8    would be to assert the Fifth Amendment privilege as to anything

9    other than the conduct, what was found and what was said in May

10   of 2002; that is, everything that's relevant to the conduct on

11   the day of arrest and the days leading up to arrest, when he

12   planted it, how many plants he planted, all of that, I would

13   agree.

14           I do not believe in order to trigger the safety

15   valve the -- the theory is you must incriminate yourself as to

16   other offenses in other years other than the year and time in

17   question of the subject.  Thus, literally during every --

18   every -- in order to satisfy the safety valve, there would be

19   an automatic, automatic declaration by the government in every

20   case, because if law enforcement officers did not ask you that

21   you've committed an offense of any kind in any other year and

22   you didn't tell us about it then we have the right to ask you

23   that, and if you incriminate yourself, so be it.  I

24   respectfully, your Honor, would maintain that neither the

25   Constitution nor the sentencing guidelines, as envisioned by

1    the Congress of the United States, requires a citizen to do

2    that.

3              THE COURT:   Well, I -- I will tell you, Mr. Byrne,

4    that the way I read this guideline provision, it is a provision

5    that requires a defendant to give up his Fifth Amendment right

6    with respect to the offense charged and any offense that was a

7    part of the same course of conduct or of a common scheme or

8    plan.   He doesn't have to do that, of course, but that is -- I

9    read this guideline to mean that is the price of getting the

10   benefit of this guideline.

11              Ms. Hardwick, do you have anything you want to

12   add?   I see you approaching the podium.

13              MS. HARDWICK:   Yes, your Honor.   I concur with the

14   Court that Mr. Rush cannot have it both ways.   I did state

15   earlier that today's date is too late, and I'm relying on

16   United States v. Brown Lee, B-r-o-w-n L-e-e, which is cited at

17   204 F.3d 1302.

18              THE COURT:   And that case holds -- go ahead, ma'am.

19              MS. HARDWICK:   In that case -- this is a case where

20   initially when the defendant was arrested, he failed to

21   truthfully disclose his source of supply, but prior to the

22   sentence, not the day of the sentence, prior to the sentencing

23   the defendant revealed his source.   And in that case, the trial

24   court said that he was deprived of his safety valve.   The

25   11th Circuit reversed that case saying that -- making a finding

1   that there is only one time when 5C1.2 in that the date is too

2   late, and that is the date of the sentencing.

3              So I think the 11th Circuit in Brown Lee made it

4   clear you can come back even if you have not disclosed

5   everything and give all of that information but you need to do

6   it prior to the sentencing. So that's why the government

7   states that was too late.

8              In addition to that, I concur with the Court that

9   Mr. Rush cannot have the benefit of both. We're not asking, as

10  Mr. Byrne's articulated -- the government is not asking that

11  Mr. Rush tell us everything he has ever done. The government

12  is simply stating that Mr. Rush did not disclose everything

13  regarding relevant conduct which does apply in this particular

14  offense.

15             THE COURT: All right. Counsel, let me say to you

16  that it now -- the suggestions I was making now about the Fifth

17  Amendment and the fact that the safety valve requires that you

18  waive your Fifth Amendment right is, I think, now beside the

19  point because if it's too late, he can't now repair the damage.

20             The question now, as I see it, is whether Mr. Rush

21  was obliged to tell it all in the face of an interrogation that

22  did not ask him about it all. And that is a question which I,

23  frankly, sitting here today don't know the answer to. And I

24  think -- and I hate to do this. I think I could benefit from

25  some learning on this subject.

1          My getting into the question of the gun, Mr. Byrne,

2   doesn't matter if the safety valve doesn't apply.  Excuse me,

3   it does matter, because the gun -- having the gun actually

4   is -- would prevent the safety valve applying.  But I guess I

5   don't have to reach the question of the gun if the other

6   problem isn't resolved, problem about whether he cooperated

7   fully.  And so I think before I make a decision there and

8   before I hear the gun question I think I need to have you

9   instruct me somehow on whether in the circumstances of this

10  case, where the police asked him questions that he -- and he

11  answers fully and completely -- and I don't believe there's a

12  dispute about that -- to the questions he was asked but does

13  not go beyond the questions that are asked of him, whether that

14  constitutes compliance with prong five of the guidelines.

15         The government's position is, as Ms. Hardwick has

16  stated, you have to tell it all, whether he asked you or not.

17  And, as I say, my problem with that is that presupposes -- and

18  I want learning on this -- presupposes that you have to know it

19  all; that is to say, you have to know that, for example,

20  failing to tell the government about Mexico or Amsterdam

21  because that appears on one of these film packets is something

22  that the defendant should know he must tell the government.

23         Have I made myself clear about what my problem is,

24  counsel?

25         MR. BYRNE:  Yes, your Honor, and I'm -- and without

1    trying to be obtuse with the Court, let me see if I can also

2    qualify one other thing.

3              THE COURT:  Yes.

4              MR. BYRNE:  Our position is that he basically, when

5    interviewed, told and answered the questions placed to him by

6    Captain Majors.

7              Let me suggest that most citizens, even including a

8    person who has had the benefit of the education of Mr. Rush but

9    who has had no contact with the federal court system, doesn't

10   know the sentencing guidelines, is unfamiliar with them,

11   certainly is not familiar with the requirements of the safety

12   valve, does not know that if he doesn't say everything that he

13   could probably be said at that time that he is running the

14   risk -- because if I understand the government's position, and

15   I believe that it's a little bit -- it's conflicting in my

16   judgment, and the conflicting part is if today is too late,

17   then I do not understand the objection that they would have

18   with regard to were Rush today to stand and take the Fifth

19   Amendment as to events other than the charged offense, how the

20   government would be prejudiced by that other than for the pure

21   purpose of having him incriminate himself about other crimes.

22             We believe that -- respectfully, that that is a

23   disingenuous position, that a citizen, when he is confronted by

24   a law enforcement officer, has the duty first, as we know, to

25   identify himself and to answer relevant questions placed to him

1  during that citizen-police encounter; that beyond that

2  encounter, the response to questions placed to him by seasoned

3  police officers and investigators and the responses to those

4  questions are what at the outside should be expected of a

5  defendant to be able to avail himself of having, quote,

6  cooperated with law enforcement.

7          Now, the fact that counsel, who is gifted, can come

8  up with other permutations after the fact and down the road by

9  more than a year, we suggest simply is not what is triggered

10  under these provisions.

11         The conflict I have is if it's too late today,

12  whatever he says today with regard to other crimes that she ask

13  him about can't help him to convince the Court by basis of the

14  11th Circuit precedent that she has cited to the Court, then if

15  that be the case, then there is no valid reason why a defendant

16  cannot assert the Fifth Amendment protection as to other

17  crimes.

18         THE COURT:  Well, that seems right to me, because,

19  as I said when I started this, it seems -- the Fifth Amendment

20  question seemed beside the point if he can't repair the problem

21  today.  And if the 11th Circuit says he can't -- it's too late

22  to repair the problem, he may as well assert his Fifth

23  Amendment right.

24         The question now for me is the one that I started

25  before.  Is he required to tell you all he knows if the police

1   officer doesn't ask him but he tells the police officer

2   everything he asked, he answers truthfully everything the

3   officer asks?  That's the question.

4           Ms. Hardwick, you said he's required to tell it

5   all, and I just -- I think the way for me to respond to this --

6   because I didn't know -- you found the case and have cited me

7   the case that says today is too late, and before I make another

8   mistake about the law, I'd like to hear from you about what the

9   law is about what a defendant must do in the face of being

10  interrogated.

11          I tell you, as we begin the argument, Mr. Byrne

12  makes a powerful argument that a defendant is not thinking in

13  guidelines terms.  He answered truthfully the questions he's

14  asked.  Does he know he's supposed to tell you everything else

15  that you don't ask him?  That sort of thing.

16          So I'd like to have some learning on this before I

17  proceed further.  Can you do that?

18          MS. HARDWICK:  Your Honor, I believe I can attempt

19  to clarify some things for the Court.

20          First of all, the government is not asserting that

21  a citizen would be aware of the safety valve.  That is not the

22  government's position.  Mr. Rush has had counsel from his

23  initial appearance.  Mr. Byrne has been involved in this case

24  from a very early onset, and, in fact, discussed the very issue

25  of safety valve at the preliminary meeting with the probation

1    officer before any discussion or before any other court

2    appearances other than an initial appearance.  So he has had

3    the advice of counsel for that purpose.

4              The very same criteria that we are discussing today

5    has been the same from the very same day.  The government is

6    not saying that Mr. Rush would have known, but certainly

7    counsel would have known what the criteria would have been for

8    him to qualify for the safety valve.  The only focus --

9              THE COURT:  Let me ask you --

10             MS. HARDWICK:  The only focus --

11             THE COURT:  I'm sorry, go ahead.  Go ahead, finish

12   your statement.

13             MS. HARDWICK:  The only focus that counsel has had

14   was whether or not the two-level gun enhancement applies.  That

15   is the only focus of the five-prong criteria that has been

16   focused on.  No attention has been paid to the fifth prong.

17   But when he asserted in his motion to me the acceptance of

18   responsibility and listed the things, I went back and evaluated

19   word for word what the criteria was and addressed it

20   accordingly.

21             I don't think it's fair to say that the government

22   is disingenuous because we are saying it's too late.  I'm

23   simply following the law that I did not write, that is what the

24   case says.

25             Your Honor, I believe that probation has found a

1    number of cases that speaks to some of the concerns that the

2    Court has.  In addition, co-counsel for the government has

3    listed some of those cases that we can either give to the Court

4    or his clerk or get copies of them.

5         THE COURT:  Let me ask you this:  At sometime

6    before this date -- I know there have been discussions with

7    Mr. Rush about sale and distribution, has someone asked him to

8    tell it all about those things?

9         MS. HARDWICK:  Your Honor, each time that subject

10   matter has come up, Mr. Byrne has requested that he not be

11   asked.  If your Honor will recall, even when the government

12   attempted to go into that during the plea colloquy, the Court

13   said that he need only state the elements of the offense that

14   he was charged, which was manufacturing 100 plants or more --

15   100 or more plants of marijuana.  The government even at that

16   point attempted to go into some of the additional information

17   contained in Mr. Rush's signed statement.  Mr. Byrne objected,

18   the Court sustained that objection.  So each -- at each point

19   that the government has tried to get any additional information

20   from Mr. Byrne -- from Mr. Rush, I'm sorry, Mr. Byrne has

21   objected.  During one of the suppression hearings when Mr. Rush

22   was on the stand, the government attempted to ask Mr. Rush

23   questions, Mr. Byrne objected.

24        So the government's position, your Honor, is that

25   you cannot protect or assert a Fifth Amendment right concerning

1    the relevant conduct of this offense and then come into court

2    and not having satisfied the fifth prong expect to receive the

3    safety valve.  And the government believes that if the Court

4    makes a finding either on this fifth prong or on the first

5    prong that says that he had a dangerous weapon, any one of the

6    elements would disqualify him for the safety valve.

7                 THE COURT:  All right.  Let me ask you this,

8    counsel.  You've got these cases about what the defendant has

9    to do that you want to give me, Ms. Hardwick; is that right?

10               MR. BYRNE:  Your Honor, I received Mrs. Hardwick's

11   papers this morning, and the probation officer has been kind

12   enough to share with her, my associate or my assistant the --

13   some of the provisions and the cases that she has read.  I have

14   not read those cases, and, your Honor, frankly, I would like

15   the opportunity to try to distinguish those cases and see if

16   there has been an actual case because simply reading the

17   summary of those cases one cannot tell whether or not there was

18   an issue or the issue was drawn as it's been posited to this

19   Court with regard to what a defendant has done in response to

20   questioning.

21               Now, the -- with regard to Mrs. Hardwick's last

22   remarks, we put Mr. -- and I don't have the hearing matters in

23   front of me -- when I placed the defendant on the stand, my

24   recollection is it was not the assertion of the Fifth

25   Amendment, but I limited the inquiry and advised the magistrate

1    judge that I would be asking him questions dealing only with

2    the issues touching upon the Fourth and Fifth Amendment as

3    opposed to the elements of the offense; that is, whether or not

4    the circumstances surrounding the events that took place that

5    afternoon up to the point of his arrest and interrogation,

6    we -- the unique facts in that simply were that the seizure of

7    the marijuana plants outside the residence had already taken

8    place at the time he arrived at his gate and was then escorted

9    up to the house, placed under arrest by another law enforcement

10   officer.

11             THE COURT:  All right.  I think that I'm not going

12   to be able to resolve the matter today.  Let me -- would you be

13   prepared to proceed tomorrow, Mr. Byrne?

14             MS. HARDWICK:  Your Honor, I know you've addressed

15   Mr. Byrne, but Ms. Hardwick for the government --

16             THE COURT:  I was going to ask you next.

17             MS. HARDWICK:  I am scheduled to go to Washington

18   this afternoon, your Honor, to prepare for an oral argument

19   when we have a moot court tomorrow morning.

20             THE COURT:  All right.  Let me tell you what my

21   schedule is, counsel, so you can work around this.  Tomorrow --

22   at the end of the day tomorrow I go on vacation for a week, and

23   I will not be back until the week of August 11th.  And so we

24   need to work around that.  So if tomorrow won't work for you,

25   then we need to work around when I come back.

1            Lisa, have you got my calendar up?

2            THE CLERK:  I do.

3            MS. HARDWICK:  Your Honor, for the government, the

4    week of August 11th should be a good week.

5            THE COURT:  Mr. Byrne, how about you?

6            MR. BYRNE:  Your Honor, the week of the 11th,

7    unfortunately, I have three trials that week.  They're short,

8    they're in state court, but they're all going.  One's on the

9    11th, one's on the 13th, and one is the 14th.  And we would ask

10   leave of the Court if we could possibly either do it the 19th,

11   20th or 22nd.

12           THE COURT:  Lisa, can we do it one of those dates?

13           THE CLERK:  The 22nd is a Friday, so you can do it

14   the 19th or the 20th in the morning.

15           THE COURT:  We probably should reserve the whole

16   morning for this.

17           THE CLERK:  Okay.

18           THE COURT:  19th or the 20th, is that what you say?

19           MR. BYRNE:  The 19th would be -- your Honor, 19th

20   would be convenient as far as my calendar if it is convenient

21   with the Court's and the government's.

22           THE COURT:  Ms. Hardwick?

23           MS. HARDWICK:  The 19th appears to be clear.  I

24   don't have my calendar here, I'm relying on memory, but I

25   believe the 19th and 20th is clear.  The 22nd would not be

1   clear for the government.

2              THE COURT:  All right.  I want to start it in the

3   morning, because I have things already scheduled in the

4   afternoon.  I'd like to -- what time does the court open

5   there?

6              MS. HARDWICK:  8:00, your Honor.

7              THE COURT:  It starts at 8:00?  It starts at 8:00

8   there?

9              MS. HARDWICK:  Your Honor, 8:00, we have had some

10  hearings scheduled to begin at 8:00, yes.

11             THE COURT:  Okay.  Let's do it at 8:30 your time,

12  that would be 9:30 my time.  That gives me a chance to set all

13  of this up.  9:30 on August the 19th.

14             MR. BYRNE:  Yes, your Honor.

15             THE COURT:  Okay.

16             MS. HARDWICK:  Yes.

17             THE COURT:  In the meantime, let me ask you,

18  Mr. Byrne -- first of all, Ms. Hardwick, you are -- can you fax

19  me the names of those cases that you were talking about?

20             MS. HARDWICK:  Yes, sir, your Honor.

21             THE COURT:  And if there's anything else -- okay.

22  If there's anything else you want to have, you should fax that

23  to me in the next -- how long are you going to be in

24  Washington?

25             MS. HARDWICK:  I will be back on Thursday night, in

1   the office on August 1st, Friday.

2               THE COURT:  Is Mr. Harmon, your colleague, there?

3               MS. HARDWICK:  We will coordinate that, your Honor,

4   to try to get those to the Court sooner than that.

5               THE COURT:  All right.  Why don't you get me the

6   materials, including the cases you were talking about; and,

7   Mr. Byrne, if you have a writing, I'd like to get that as

8   quickly as I can.  When do you think you can get it to me?

9               MR. BYRNE:  Your Honor, we'll -- I'll -- we'll

10  start working on it today.

11              THE COURT:  All right.

12              MR. BYRNE:  And I -- the Court -- excuse me, your

13  Honor.  When does the Court return from vacation?

14              THE COURT:  I'll be back on the 11th, and I'd like

15  for sure to have it by the 11th, but I'd like for you to give

16  it to me as soon as you can give it to me because I can have my

17  law clerk start working on it.

18              MR. BYRNE:  Your Honor, if I could have seven days

19  from today to submit it or five days.

20              THE COURT:  Let's make it five days.  That would be

21  the middle of next week, would it?

22              THE CLERK:  The 7th?

23              THE COURT:  August 7th.  Let me give you five days

24  to get something to me.  The government will be sending me

25  something by fax right away; isn't that right, Mr. Harmon?

1          MR. HARMON:  That's correct, your Honor.

2          THE CLERK:  August 7th is seven days.

3          THE COURT:  As it turns out, August 7th is seven

4    days, Mr. Byrne, so you'll get seven full days, but two of

5    those days will be Saturday and Sunday.  So you get seven days.

6          MR. BYRNE:  Thank you, your Honor.

7          THE COURT:  All right.

8          MR. HARMON:  May the United States have a response

9    to Mr. Byrne's submission or may the government make a response

10   to Mr. Byrne's submission?

11         THE COURT:  Yes, but I need to get that a couple of

12   days later.  If he's filing something by the 7th, by the

13   following Monday, the 11th, I need to have your response, all

14   right?

15         MR. HARMON:  Yes, sir.

16         MR. BYRNE:  Your Honor, I will have it hand

17   delivered to the government when it's sent to your court.

18         THE COURT:  Let me give you my fax number:

19   617-748-4586.  And you can -- I think you can fax those to me.

20         MR. BYRNE:  Your Honor, may I read that number

21   back?

22         THE COURT:  Surely.

23         MR. BYRNE:  617-743 --

24         THE COURT:  No, no, 748.

25         MR. BYRNE:  748-4586.

1                THE COURT:  That's right.  Isn't that right, Lisa?

2    Let me just check to be sure.

3                You should have 748-4586.

4                MR. BYRNE:  Thank you, your Honor.

5                THE COURT:  Let me give you Ms. Hourihan's

6    telephone number, too, Lisa Hourihan my courtroom deputy:

7    617-748-9177.

8                (Discussion off the record.)

9                THE COURT:  Oh, I'm sorry, Lisa informs me she's

10   going to be out next week, but you have her telephone number

11   anyway.

12               And you can communicate to me by Ms. Carnes is down

13   there, isn't she, in the courtroom?

14               MS. HARDWICK:  There is a courtroom deputy present,

15   your Honor.

16               THE COURT:  All right.  And the courtroom deputy

17   has been communicating with me by e-mail, so if there's

18   something you need to have sent me right away by e-mail, you

19   can give it to the courtroom deputy there who will e-mail it to

20   me.  All right?

21               MS. HARDWICK:  Yes, sir.

22               MR. BYRNE:  Yes, your Honor.

23               THE COURT:  How long will your witnesses take if we

24   get to the witnesses, Mr. Byrne?

25               MR. BYRNE:  Your Honor, I believe that the

Page 43

1   witnesses will probably be no more than two and a half hours,

2   they're very short, and the inquiry is fairly limited, and I

3   think that both of us would be asking questions so that the

4   longest direct or cross-examination by either one of us should

5   not extend more than about 20 minutes on either direct or

6   cross.  And I think there are going to be three such witnesses,

7   possibly four.

8              THE COURT:  And all of those -- all of those

9   witnesses --

10             MR. BYRNE:  In light of the Court --

11             THE COURT:  All of those witnesses will be about

12  the gun.

13             MR. BYRNE:  Will be by what, your Honor?

14             THE COURT:  Will be about the guns.

15             MR. BYRNE:  Yes.  Excuse me, I apologize.  Yes,

16  your Honor.

17             THE COURT:  Okay.  All right, then.  Well, there's

18  nothing more we can do today.  We will -- unless you have

19  something more you want to tell me.  Is there anything else?

20             MR. BYRNE:  I need to correct my last remark.

21  Dependent upon what the research shows, I would anticipate

22  calling Mr. Rush to testify both about guns and the questions

23  asked to him by law enforcement and as the issues drawn by the

24  Court this morning.

25             THE COURT:  All right.  But I still believe we can

1   get all that done in two and a half hours.

2           MR. BYRNE:  Yes, sir.

3           THE COURT:  All right.

4           MS. HARDWICK:  Your Honor --

5           THE COURT:  Pardon me?

6           MS. HARDWICK:  Depending on the evidence that

7   Mr. Byrne puts on the 11th, the government did have today one

8   additional witness, and if it becomes necessary we will put

9   that witness on.  It would be a very short witness regarding

10  Mr. Rush's statement so that the Court would have a reference,

11  which if Mr. Byrne does not object, I will send a copy to the

12  Court so you will have a copy in your possession when it's

13  discussed.

14          THE COURT:  Okay.  And I still intend to do this by

15  video conference.  Any problem with that?

16          MS. HARDWICK:  No, sir, your Honor.

17          THE COURT:  You can arrange to have the witness

18  shown to me on the screen just as I'm appearing on the screen.

19  So we'll do it that way unless there's a problem.

20          MS. HARDWICK:  Yes, sir, your Honor.

21          THE COURT:  Okay.

22          MR. BYRNE:  That's fine with us, your Honor.

23          THE COURT:  Thank you very much.  We're in recess

24  until August 19th at 8:30 your time, 9:30 my time.

25          MR. BYRNE:  Yes, your Honor.

1          THE COURT:  Thank you very much.

2          (Court adjourned at 1:19 p.m.)

3              ¡  ¡  ¡  ¡  ¡  ¡  ¡

4                  CERTIFICATION

5          I certify that the foregoing is a correct

6    transcript of the record of proceedings in the above¡entitled

7    matter to the best of my skill and ability.

8

9

10

11    _____          _____

12    Debra M. Joyce                    Date

13    Official Court Reporter

14

15

16

17

18

19

20

21

22

23

24

25