IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF ALABAMA

EASTERN DIVISION

ROBERT H. RUSH, JR.,

    Movant,

vs.

UNITED STATES OF AMERICA,

    Respondent.

_____/

CASE NO. 1:05cv734-T

(02cr93-T)

**MOVANT'S REPLY IN OBJECTION TO GOVERNMENT'S RESPONSE TO MOVANT'S**

**28 U.S.C. §2255 MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE**

    COMES NOW THE Movant, Robert H. Rush, Jr. (hereinafter "Movant"), pro se, and respectfully files these objections before this Honorable Court.

### SUMMARY OF ARGUMENT

    In its "Response" to petitioner's 28 U.S.C. §2255 motion ("§2255") the government submits that Movant is barred from raising his claims because he raise same on appeal. However, in his §2255 Movant brings those claims before this Court via claims of ineffective assistance of counsel. The government further, argues that some of Movant's issues are precluded from review because they were previously decided on appeal. However, those arguments are also raised by petitioner under the ineffective assistance of counsel standard. In essence, Movant is not precluded from raising his issues before this Court because, in the instant matter there exists no prior review by the Eleventh Circuit on counsel's performance (i.e. ineffective) and thus, the

issues are not precluded from review by any procedural bar such
as res judicata, collateral estoppel or for that fact any issue
preclusion. The government also argues that Movant's arguments
under Blakely, infra, are barred from review because the
aforementioned cases are not applicable to cases on collateral
attack such as the instant litigation (i.e. §2255 motion). The
government's argument all though correct in other cases is
misplaced in the instant matter because, Movant's direct review
to his conviction and sentence did not achieve comity and
finality until **October 4, 2004**, way after the Supreme Court
decided Blakely on June 24, 2004. Blakely v. Washington,
_____U.S. ____, 124 S.Ct. 2531 (June 24, 2004).

For the foregoing reasons this petitions should be decided on
the merits and as such, relief should be granted based on the
foregoing argument of law.

## ARGUMENT AND MEMORANDUM OF LAW

A.  Movant's Sentence Enhancement for Possession of a Firearm
    Violates Movant's Sixth Amendment Right to Trail and to Only
    Be Held Liable For Charges Admitted by the Defendant or
    Proved Beyond a Reasonable Doubt.

In his §2255 motion Movant challenges his sentence
enhancement for possession of a firearm during the commission of
the instant offense. This Court enhanced Movant's sentence under
U.S.S.G. §2D1.1(b)(1), which is now a provision of law declared
as "unconstitutional" by the Supreme Court. The government
defends the sentence enhancement by wrongfully relying in United
States v. Rodriguez, 398 F.3d at 1298, 1296 (11th Cir. 1298, 1296

-2-

(11th Cir. 2005). In Rodriguez, supra, the Eleventh circuit upheld the preponderance of the evidence standard at sentencing in relation to the "drug amount" attributable to the defendant. However, the circumstances involved in the instant matter are totally different from those encountered by the Eleventh Circuit in Rodriguez. In Rodriguez the Court reviewed the defendant's claim under the "plain error" standard because, the defendant failed to object to the sentence enhancement during sentencing, and thus, the Court reviewed the claim under Fed.R.Civ.P. Rule 52. In the case at bar Movant vigorously objected to the sentence enhancement for possession of a firearm during his objections to the Pre Sentence Investigation Report ("PSI") and at sentencing. Consequently, the district court made the appropriate findings in relation to Movant's objections an therefore, this Court does not need to review Movant's claim under the plain error standard. Further, because Movant objected to the sentence enhancement as set forth above, this Court must now recognize that Movant did "NOT" waive his right to challenge the sentence enhancement. The essence of Movant's claim as preserved during the aforementioned objections is that the sentence enhancement under U.S.S.G. §2D1.1(b)(10 violated his Sixth Amendment right to jury trial and the right of a defendant to only be liable for charges proved beyond a reasonable doubt or admitted by the defendant. In the instant case there exists no question as to the violation of Movant's Sixth Amendment by way of the sentence enhancement. The law is clear, the Supreme Court has ruled U.S.S.G. §2D1.1 as an unconstitutional provision of law

-3-

and thus, Movant's enhancement cannot stand because, the enhancement clearly pollutes Movant's sentence with its unconstitutionality.

For the foregoing reasons Movant's enhancement under U.S.S.G. §2D1.1 necessitates vacating.

B.  Movant's Sentence And Conviction Necessitates Reversal For The Following Reasons:

(1). Movant's Conviction And Sentence Constitutes A Fundamental Micarriage Of Justice.

(2)  Petitioner's Sentence Is Unconstitutional.

(3)  The Applicability Of In Re Winship, Apprendi, Blakely, And Booker to Movant's Case.

(4)  Blakely And Booker Created An Intervening Change Of Law In "all" Federal Circuits, And As Such Movant's Issues Are Properly Presented Via 28 U.S.C. §2255.

(5)  The Constitutional Violations In The Instant Matter Constitute "Structural Error", And Therefore, Movant's Conviction And Sentence Cannot Be Upheld.

(6)  Structural Error Warrant Recersal Regardless Of The Evidence Against The Defendant.

(7)  The Supreme Court Has Held That Whenever A Ruling Is Intended To Preserve The Integrity Of The trial Process Such Ruling Is To Be applied Retroactively.

1.  **Movant'S Conviction and Sentence Constitute a Fundamental
    MISCARRIAGE OF JUSTICE**

The majority of the federal Circuit Courts have ruled that under <u>Blakely v. Washington</u>, 124 S.Ct. 2531 (2004) as affirmed in <u>United States v. Booker</u>, 543 U.S.____, 125 S.Ct. 738 (2005) a sentence imposed under the mandatory ex-mandatory United States Sentencing Guidelines constitutes plain error. See <u>United States v. Antonakopoulos</u>, U.S. App. LEXIS 3015 (1st Cir. 2005); <u>United States v. Serrano-Beauvaix</u>, 2005 WL 503247 (1st Cir. March 4, 2005); <u>United States v. Hughes</u>, 396 F.3d 373 (4th Cir. 2005); <u>United States v. Mares</u>, 2005 WL 503715 (5th Cir. 2005); <u>United States v. Oliver</u>, 397 F.3d 369 (6th Cir. 2005); <u>United States v. Barnett</u>, 2005 U.S. App. LEXIS 2644 (6th Cir. 2005)(Plain Error prejudice presume for mandatory guidelines sentences); <u>United States v. Ameline</u>, 2005 WL 350811 (9th Cir.). en banc. <u>United States v. Labastida-Segura</u>, 396 F.3d 1140 (10th Cir. 2005). The "plain error" of a sentence under <u>Blakely/Booker</u>, supra is the direct result of the wrongful interpretation of <u>Apprendi</u>, infra, by the federal district and appellate courts. <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 120 S.Ct. 2348 (2000). Therefore, the standard of cause and prejudice are axiomatically met. Further, there is no case law that would support the proposition that a violation of a defendant's Sixth Amendment right to jury trial and to be found guilty "only" by the standard

-5-

would not constitute a fundamental miscarriage of justice. See
Murray v. Carrier, 477 U.S. 478, 91 L.Ed.2d 397 (1986). In Murray
the supreme Court relied in In re Winship, infra, when conducting
its analysis in reference to "what constitutes" a clear manifested
miscarriage of justice, the Court relied in its decision in In
re Winship, 397 U.S. 358, 25 L.Ed.2d 368, 90 S.ct. 1068 (1970).
The Court held that "the Court held the rule in In re Winship to
be held retroactive, because 'the major purpose of the
constitutional standard of proof beyond a reasonable doubt
announced in Winship was to overcome an aspect of a criminal trial
that substantially impairs the truth finding function'.
Consequently, our rejection in Engle of the contention advanced
today - that cause need not be shown if actual prejudice is shown
- is fully applicable to constitutional claims that call into
question the reliability of an adjudication of legal guilt". Id.
at 413. The Court went on to hold that "However, as we also noted
in Engle, '[i]n appropriate cases' the principles of comity and
finality that inform the concepts of cause and prejudice 'must
yield to the imperative of correcting a fundamental unjust
incarceration." 456 U.S., at 135, 71 L.Ed.@d 783, 102 S.Ct. 1558.
'We remain confident that, for the most part, 'victims of
fundamental miscarriage of justice will meet the cause and
prejudice standard.' Ibid. 'But we do not pretend that this will
always be true'. 'accordingly, we think that in an extraordinary
case, where a constitutional violation has probably resulted in
the conviction of one who is probably innocent, a federal habeas

-6-

court may grant the writ even in the absence of showing of cause for the procedural default". Id. at 413 [477 US 495]. The Court's ruling in Murray made enphasis on the inconsistent jury verdict rendered in In re Winship. "Moreover, although neither Francis nor Wainwright v. Sykes involved a constitutional claim that directly called into question the accuracy of the determination of the petitioner's guilt, the defaulted claims in Engle, no less than respondent's claim in this case, did involve issues bearing on the reliability of the verdict, In re Winship, (citations omitted), which was 'the basis for [the prisoner's] constitutional claim', Engle, 456 U.S., at 131, 71 L.Ed.2d 783, 102 S.ct. 1558, which holds that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt on every fact necessary to constitute the crime with which he is charged.'" Id. at [477 U.S. 495].

In essence, if a person is not found guilty beyond a reasonable doubt then, his incarceration violates "Due Process". See In re Winship, supra, Murray, supra. Therefore, the incarceration of the defendant would not only be unconstitutional but it would also constitute a manifested miscarriage of justice that cannot be upheld under In re Winship, supra, Murray, supra, Engle, supra, Apprendi, supra, Blakely, supra, Booker, supra, or the standards of Due Process.

For the foregoing reasons Movant submits that this Honorable Court should set aside the principles of comity and finality that inform the concepts of cause and prejudice in order to correct

the clearly manifested miscarriage of justice that has taken place in the case at bar. As established by the record Movant never admitted to nor was he found guilty of the elements of the offense for which he stands convicted and his sentence enhanced.

## 2. Petitioner'S Sentence Is Unconstitutional

At the time of Movant's conviction, sentence, and appeal, "all" federal District and Circuit Courts were under the wrongful impression that under Apprendi, supra, the maximum punishment that could be imposed for a criminal offense was the maximum punishment dictated by the criminal statute, and that judge-made findings superseding the scope of the indictment and jury findings which aggravated the offense thereby, increasing punishment were permissible. However, in Blakely, supra, the Court clarified such misinterpretation by federal district and circuit courts. In Blakely, Justice Scalia, writing for the Court, held: "Our precedents make clear however, that the 'statutory maximum for Apprendi purposes is the maximum sentence a judge may impose solely on facts reflected in the jury verdict or admitted by the defendant'". (emphasis in original)(citing Ring v. Arizona, 536 U.S. 602 (2002))

The Court's opinion in Blakely has now been made applicable to the United States Sentencing Guidelines ("U.S.S.G."). See Booker, supra. Under Booker, the U.S.S.G. are now to be considered advisory rather than binding. As to the issue at bar, the Court in Booker held the following:

-8-

"According we reaffirm our holding in Apprendi: Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved beyond a reasonable doubt." Id.

There is no question that Petitioner's sentence was greatly enhanced beyond what he would have received based on the jury verdict. The amount of marijuana was not set forth in the Indictment and consequently, it cannot be said that the jury found Movant guilty of such amount. Therefore, it is axiomatic that the jury verdict in the instant case was an unreliable verdict. The maximum sentence under the U.S.S.G. for the charged offense in this case should have been 16 month's imprisonment and no restitution. Petitioner's sentence was enhanced based on judge-made findings which impermissibly superseded the scope of the Indictment and the findings of the petit jury. Consequently, Movant's conviction and sentence present a manifested miscarriage of justice. See In re Winship, at 364! (1970).

3. **The Applicability of In re Winship, Apprendi, Blakely, and Booker, to Movant's Case**

The plain language of 28 U.S.C. §2255 support's Movant's position that he is entitle to be resentenced under the Booker, decision:

-9-

"A prisoner under sentence of a court established by an Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States , or that the court was without jurisdiction to impose such sentence, or the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

In the instant case, the Movant's sentence was imposed "in violation of the Constitution" because, the sentence was arrived at "by application of the preponderance of the evidence standard" rather than the constitutionally required standard of proof "beyond a reasonable doubt by the jury's verdict, and not by judge made findings. In re Winship, Apprendi, and Booker, ante, stand for the proposition that the Constitution requires a jury to make such findings for the purposes of sentencing. Id. In re Winship, 397 U.S. 358, 364; 25 L.Ed. 675, 24! S.Ct. 431 (1970); United States v. Gaudin, 515 U.S. 506, 511, 132 L.Ed.2d 444; 115 S.Ct. 2310 (1995).

Movant's sentence "exceeded the maximum authorized by law." The term maximum authorized by law as defined by Booker and Apprendi is any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must

-10-

be admitted by the defendant or proved to a jury beyond a reasonable doubt. Because In re Winship, Apprendi, and Gauding, were all decided before the instant case achieved finality, the clear language of §2255 requires the Court to order Movant to be resentenced under the standards of Booker which extended Blakely to the federal sentencing guidelines, re-affirmed Apprendi, and relied in In re Winship, and the ruling was intended to preserve the substance of the Sixth Amendment, denial of this petition would be inconsistent with the Supreme Court's holdings in the supra cited cases, the Fifth Amendment's "Due Process Clause' and the Sixth Amendment right to jury trial and the prerequisite that a defendant be found guilty beyond a reasonable doubt before he is said that his incarceration and sentence are constitutional.

In Yates v. Aiken, 484 U.S. 211, 216-17 (1988), the Court addressed the issue of whether a petitioner is entitled to have a "new rule" applied to his motion for post conviction relief vis a vis the law at the time the case was decided. The issue for this court is how the Yates decision defined the terms "new rule" versus the application of a constitutional principle:

"The theory that a habeas petitioner is entitled to the law prevailing at the time of his conviction is however, one which is more complex than the Court has seemingly recognized. First, it is necessary to determine whether a particular decision has really announced a "new" rule at all or whether it has simply applied a well-established

-11-

constitutional principal to govern a case which is closely analogous to those which have been previously considered in the prior case law....One need not be a rigid partisan of <u>Blackstone</u> to recognize that many, though not all, of the Court's constitutional decisions are grounded upon fundamental principles whose content does not change dramatically from year to year, but whose meaning are altered slowly and subtly as generations succeeds generation. In such a context that it appears very difficult to argue against the application of the "new" rule in all habeas cases since one could never say with any assurance, that this Court would have ruled differently at the time the petitioner's conviction became final. 394 U.S., at 263-64. <u>Yates</u>, supra, citing <u>Desist v. United States</u>, 394 U.S. 244, 263-64 (1969)(Harlan, J. dissenting).

The decision in <u>Booker</u>, is **not** a new rule. Rather the decision is an application of a basic constitutional principle to the federal sentencing guidelines, which <u>In re Winship</u>, supra, and <u>Apprendi</u>, supra, both codified: "It has been settled throughout our history that the constitution protects every criminal defendant against conviction except by proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged...It is equally clear that the Constitution gives a criminal defendant the right to demand that a jury find him guilty of all the elements of the crime with which he is charged." <u>Booker</u>,

-12-

citing In re Winship, 397 U.S. 358, 364 (1970) and United States
v. Gauding, 515 U.S. 506, 511 (1995). The decision in Booker
extends the rules codified in In re Winship (i.e. which was held to
be retroactive to cases on collateral review) and Apprendi as
clearly stated by by Justice Stephens in part one of Booker:
"Accordingly, we reaffirm our holding in Apprendi (i.e. Apprendi
relied in In re Winship):

> "Any fact (other than a prior conviction) which is necessary
> to support a sentence exceeding the maximum authorized by
> the facts established...must be admitted or proved to a jury
> beyond a reasonable doubt." Id.

To determine whether Movant is entitle to be re-sentenced
under the standards announced by the Supreme Court in
In re Winship, Apprendi, Blakely, and Booker, this Court    must
understand the interplay between the two cases which were
intertwined with Yates. The exact same set of factual
circumstances (regarding the application of one case decided before
Yates and one case decided after Yates' direct appeal was decided)
exists in this matter vis a vis. In re Winship, (decided before
Movant's appeal), Apprendi, re-affirming In Re Winship (decided
after Movant's appeal was perfected).

In Yates, the South Carolina Attorney General argued that
based on Justice Harlan's theory of retroactivity stated in his
dissent in Deisist, (which was subsequently adopted by the Supreme
Court, see Yates, supra, at 215), a new announced constitutional
rule should not be applied retroactively to cases pending on

collateral review. Yates, supra, at 215. Under this argument, Movant would not be entitled to be resentenced.

However, the Court in Yates applied Justice Harlan's "new rule versus application of well established constitutional principle" in holding that Yates was entitled to retroactive application of a decision by the Supreme Court - meaning arguendo that the Movant here, is entitled to be resentenced under Booker. Yates was a petitioner who sought retroactive application of the decision in Francis v. Franklin, 471 U.S. 307 (1985), which was decided after Yates' direct appeal was denied. The decision in Francis, was based on the decision in Sandstorm v. Montana, 442 U.S. 510 (1979), a decision issued prior to Yates' appeal.

The interplay between the decision in Sandstorm, Francis, and Yates, is crucial to understand since it mirrors the timing and factual scenario of the Movant at bar. In re Winship, (decided before Movant's appeal), Apprendi (reaffirming In re Winship and decided after Movant's appeal), Blakely and Booker (both reaffirming the essence of the Sixth Amendment, the standard of proof beyond a reasonable doubt, the essence of the Sixth Amendment, reaffirming In re Winship, decided after the time expired for Movant to argue same on direct review (§2255 motion)).

The Yates Court held that Yates was entitled to retroactive application of Francis by holding that: "Our decision in Francis was merely an application of the principle that governed our decision in Sandstorm v. Montana, which had been decided before

-14-

petitioner's trial took place." <u>Yates</u>, 216-17. The Court in <u>Yates</u> announced that the decision in <u>Francis</u> did not announce a new rule. <u>Id</u>. at 218. <u>Yates</u> held that <u>Francis</u> merely applied a constitutional holding made in <u>Sandstorm</u>. Under this analysis, <u>Yates</u> was entitled to have the decision in <u>Francis</u> applied retroactively.

Simmilarly, the holding in Booker did not announce a new rule. Rather, the holding in <u>Booker</u> applied the Constitutional principles codified in <u>In re Winship</u>, (decided in the year 1970), and reaffirmed in Apprendi, (decided in the year 2000). As in <u>Yates</u> the Movant in the case at bar, seeks retroactive application of <u>Booker</u>, (decided after Movant's direct appeal) and at which time the Supreme Court's decision in <u>In re Winship</u> was controlling law (stare decisis). Therefore under the holding in <u>Yates</u>, the Movant is entitled to retroactive application of the holdings in <u>Booker</u>, and must be resentence under the principles codified in <u>Apprendi</u>, and in <u>In re Winship</u>, both mandating that Movant only be liable at resentencing for charges that were admitted or proved beyond reasonable doubt, and for the sentence to be imposed in accordance or reflecting the legal sentencing standard found in 35 U.S.C. §3553(a).

4. **Booker Has Created an Intervening Change of Law In "All" Federal Circuits And As Such, Booker Issues Are Properly Addressed For the First Time By Way of 28 U.S.C. §2255 Motion (Habeas Corpus) Without the Need for the Supreme Court to Announce Booker Applicable to Cases on Collateral Review**

-15-

"All" federal Circuit Courts have held that a <u>Booker</u> error constitutes plain error. See ante p.5.    Needed to be noticed in the fact that the plain error consists of the "misinterpretation" by all Circuit Courts of the Standards enunciated by the Supreme Court in <u>Apprendi</u>, supra.  The Court's decision in <u>Booker</u> which clarified the standards set forth in <u>Apprendi</u> while relying in In re Winship, supra, has created an intervening change of law in "all" federal Circuits.  Therefore, Movant has a constitutional and statutory right to challenge the conviction and sentence by way of a 28 U.S.C. §2255 motion (habeas corpus).  See <u>Davis v. United States</u>,  417 U.S. 333, 41 L.Ed.2d 109, 94 S.ct. 2298 (1974).  In <u>Davis</u> the Court noted:  "The sole issue before the Court in the present posture of this case is the propriety of the Court of Appeals' judgment that a change in the law of that Circuit after the petitioner's conviction may not be successfully asserted by him in a §2255 proceeding".  See also <u>Sanders v. United States</u>, 373 U.S. 1, 10 L.Ed.2d 148 (        ). The Court in <u>Davis</u> quoted <u>Sanders</u>, supra, by noting that: "In <u>Sanders</u> the Court held, inter alia, that even though the legal issue raised in a §2255 motion 'was determined against [the applicant] on the merits on a prior application,' 'the applicant may [nevertheless] be entitled to a new hearing upon showing an intervening change in the law....'" <u>Sanders</u>, L.Ed.2d 148.  "The same rule applies when the prior determination was made on direct appeal from the applicant's conviction, instead of in an earlier §2255 proceeding, 'if the new law has been made...since the trial

-16-

and appeal'".  Kaufman v. United States,  394 U.S. 217 (1969).

"Thus, the Court of Appeals erred in holding that "the law of the case," as determined in the earlier appeal from the petitioner's conviction, precluded him from securing relief under §2255 on the basis of an intervening change in law".  Id.

The case at bar constitutes one of those cases where a miscarriage of justice has taken place because, Movant neither admitted or was found guilty of the sentence enhancements that were reached at by the application of the preponderance of the evidence during judge made findings and not by the constitutionally required standard of proof beyond a reasonable doubt.  Therefore, Movant's conviction and sentence are violative of Movant's rights under the Constitution to only be liable for charges launched by indictment (Fifth Const. Amend.), jury trial, right to be found guilty 'only" beyond a reasonable doubt by "a jury" (Sixth Amendment).  The aforementioned constitutional violations have already been ruled by the Supreme Court not to constitute harmless error not requiring reversal.  Consequently, the miscarriage of justice in the instant matter is cognizable under habeas corpus as decided by the Court in Davis.  "'Nowhere in the history of Section 2255 do we find any purpose to impinge upon prisoner's rights of collateral attack upon their convictions. On the contrary, the sole purpose was to minimize the difficulties encountered in habeas corpus hearings by affording the same rights in another and more convenient forum.' 'Thus, there can be no doubt that the grounds for relief under §2255 are

-17-

equivalent to those encompassed in §2254; the general federal habeas statute, under which relief is available on the ground that '[a person] is in custody in violation of the **Constitution** or laws or treaties of the United States.'" (Emphasis added.).  The Court concluded that the text of the statute cannot sustain the proposition that only claims "of constitutional dimension" are cognizable under §2255 thereby, implicitly holding that Movant's claims in the instant matter are "cognizable" on §2255 because, Movant's claims consists of constitutional violations of the highest magnitude.

5.  **The Constitutional Violations in the Instant Matter Constitute "Structural Error" and Therefore, Movant's Conviction and Sentence Cannot be Upheld**

A "structural error is a "defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself". <u>Arizona v. Fulminante</u>, 499 U.S. 279, 310 (1991). Such errors "undermine[s] the structural integrity of the criminal tribunal itself," <u>Vasquez v. Hillery</u>, 474 U.S. 254, 263-264 (1986), and deprive an accuse of 'basic protections'". <u>Rose v. Clark</u>, 478 U.S. 570, 577-78 (1986). "The rights violated by these errors "protect important values that are unrelated to the truth-seeking function of the trial". Id. at 587 (Stephens, J., concurring in judgment), and their deprivation has "consequences that are necessarily unquantifiable and indeterminate." <u>Sullivan</u>, 508 U.S. at 282.

-18-

The violation of the right not to be sentenced for a crime that was not charged in an indictment readily satisfies these critiria. This structural safeguard serves to protect not only the individual accused but also the system of justice. Its elimination therefore vitiates the legitimating mechanism for prosecution and represents a "structural defect[] in the constitution of the trial mechanism." Fulminante, 499 U.S. at 309. Indeed, there can be no question that bypassing this grand jury requirement "affect[s] the framework within which the trial proceeds," rather than being "simply an error in the trial process itself". Id. at 310.

The right to have a group of citizens determine the validity of charges against an accused before a criminal trial may be initiated is a fundamental protection undergirding the criminal process.

> Historically, [the grand jury] has been regarded as a primary security to the innocent against hasty malicious and oppressive prosecution, it serves the invaluable function in our society of standing between the accuser and the accused to determine whether a charge is founded upon reason or was dictated by an intimidating power or by malice and personal ill will.

Id. Wood v. Georgia, 370 U.S. 375, 390 (1962). See also United States v. Calandra, 414 U.S. 338, 343 (1974)("the grand jury's historic functions survive to this day. Its responsibilities

-19-

continue to include both the determination whether there is
probable cause to believe a crime has been committed and the
protection of the citizens against unfounded prosecution"). "When
a sentencing judge adds an element not found by the grand jury,
the result are like those other structural errors, necessarily
unquantifiable and indetermined". <u>Sullivan</u>, 508 U.S. at 282. In
the case at bar Movant's sentence stands enhanced for aggravating
factors not set forth in the indictment, not admitted by Movant,
and not proved beyond reasonable doubt thus, the district court in
the instant matter took it upon itself to substitute both, the
grand jury and the petit jury. See <u>Gaither v. United States</u>, 413
F.2d 1061, 1066 (D.C. Cir. 1969); <u>United States v. Dionisio</u>, 410
U.S. 1, 17 (1973) (noting that the grand jury's historic role as a
protective bulwark standing solidly between the ordinary citizen
and an overzealous prosecutor").

Sentencing a defendant for an offense not charged in the
indictment or found by a jury **beyond a reasonable doubt** is error
that affects "the entire conduct of the trial from beginning to
end". <u>Fulminante</u>, 499 U.S. at 309-10. These errors are as
fundamental to the structure of the trial as other errors which
the Supreme Court has previously declared "structural". For
instance, the "violation of the guarantee of a public trial
required reversal without any showing of prejudice even though the
values of a public trial may be intangible and unprovable in any
particular case". <u>Id</u>. at 294-95 (discussing <u>Waller v. Georgia</u>,

-20-

385 U.S. 545, 553 (1967). Similarly, the right to be tried by an unbiased judge, in a community that has not been exposed to publicity highly negative to the defendant, are essential, and their denial constitutes structural error. Tumey v. Ohio, 273 U.S. 510, 535 (1927); Sheppard v. Maxwell, 384 U.S. 333, 351-52 (1966). Just as a trial with a bias judge, the sentencing of a defendant for a crime not charge in the indictment is an error of such magnitude that it "infect[s] the entire trial process". Nedder v. United States, 527 U.S. 1, 8 (1999). In Brady v. Maryland, 373 U.S. 83 (1963) the Court found that the government's withholding of exculpatory evidence violated due process and that because, there existed the possibility of a different outcome during the trial the violation required reversal. Similarly, in In re Winship, 397 U.S. 358 (1970), the Court granted relief because, the major purpose of the constitutional standard of proof beyond a reasonable doubt announced was to overcome an aspect of a criminal trial that substantially impaired the truth finding function. cited in Murray v. Carrier, 477 U.S. 478, 91 L.Ed.2d 397 (1986).

In essence, there exists structural error in the case at bar requiring reversal because, Movant's sentence was enhanced based on judge-made findings conducted by the preponderance of the evidence superseding specifics of the indictment, not proved beyond a reasonable doubt, or admitted by Movant.

-21-

6. <u>Structural Error Warrant Reversal Regardless of the Evidence Against the Defendant</u>

The Supreme Court has held that structural errors require reversal "without regard to the evidence in the particular case". <u>Rose v. Clark</u>, supra, at 577 (citing <u>Chapman v. California</u>, 386 U.S. 18 - at 23 n.8 (emphasis added). "They invalidate a conviction even though there might be no doubt that the defendant is guilty". See e.g. <u>Vasquez v. Hillery</u>, 474! U.S. 254 (1986)(reversing a conviction despite overwhelming evidence of the defendant's guilt because of an error in the grand jury composition). A structural error affects more than the accuracy of the result by definition,  it undermines the very process itself, and such error cannot be plugged into an evidence-qualifying formula. In <u>Tumey v. Ohio</u>, 373 U.S. 510 (1927), the Supreme Court reversed a conviction entered by a biased judge, even though "evidence show[ed] clearly that defendant was guilty," because "[n]o matter what the evidence was against him, [the defendant] had the right to have an impartial judge". <u>Id</u>. at 535. Similarly, a defendant has a right to indictment by a grand jury and conviction by a petit jury using the standard of "guilty beyond a reasonable doubt", or admitted by the defendant in his plea agreement.

Recognizing these principles, the Supreme Court in <u>Sullivan v. Louisiana</u>, 508 U.S. 275 (1993), reversed a conviction when the petit jury guarantee was undermined by a faulty reasonable

doubt instruction.  The Court forbade a reviewing court to "engage in pure speculation--its view of what a reasonable jury would have done," when the result was that the "wrong entity judge[s] the defendant guilty.'" Sullivan, 508 U.S. at 281 (quoting Rose, 478 U.S. at 578).  "[T]o hypothesize a guilty verdict that was never in fact rendered--no matter how inescapable the findings to support that verdict might be--would violate the jury trial guarantee." Id. at 279.  In the case at bar the standard of proof beyond a reasonable doubt was violated and thus, the jury trial guarantee was bluntly violated.

The Supreme Court has consistently held that structural errors "are so intrinsically harmful as to require  automatic reversal (i.d. affect 'substantial rights') without regard to their effect on the outcome". Nedder, 527 U.S. at 7.  Because such structural errors "deprive defendants of 'basic protections'". Id. 8., they "will always invalidate the conviction." Sullivan, 508 U.S. at 279 (citing Fulminante,  499 U.S. at 309-10).

Movant submits being the victim of "structural error" because her constitutional right under the Fifth Amendment to  "only" be found guilty by the standard of "beyond a reasonable doubt" or admitted by the defendant (Movant) was violated in Movant's criminal process. See In re Winship, supra, Apprendi, supra, Blakely, supra, Sullivan, supra, Hankerson, infra, Ivan v.  New York, infra.

The safeguards of due process are not rendered unavailing simply because a determination may alredy have been reached that would stigmatize the defendant and that might lead to a significant impairment of personal liberty. The fact remains that the consequences resulting from the judge-made findings by application of the preponderance of the evidence standard in this case, compared with what the Movant pled guilty to, differ significantly. Indeed, when viewed in terms of potential difference in restriction of personal liberty attendant to the punishment each conviction carries, the distinction established by possession of the admitted amount of cocaine by the defendant and that found by the judge-made findings may be of greater importance in relation to punishment than the difference between guilt or innocence for many lesser crimes.

In _Winship_ the Court emphasized the social interest in the reliability of the jury verdicts by holding that the "use of reasonable-doubt standard is indispensible to command the respect and confidence of the community in applications of the criminal law. It is critical that the moral force of the criminal law not be diluted by a standard of proof that leaves people in doubt whether innocent men are being condemned". _Id_. at 363, 364, 25 L.Ed.2 368, 90 S.Ct. 1068.

In the instant case these interests are implicated to a greater degree than they were in _Winship_ itself. Petitioner there faced an 18-month sentence, with a maximum possible extention of an additional four and one-half years, 397 U.S., at 360, 25 L.Ed. 2d

-24-

368, 90 S.Ct. 1068, whereas Movant here has been erroneously sentenced to ( 151) months' imprisonment ( 43 ) months over what the law permits.  Both the stigma to Movant and the community's confidence in the administration of criminal law are also greater here, since the adjudication of delinquency involved in Winship was "benevolent" in intention, seeking to provide "a generously conceived program of compassionate treatment.  cf., Id. 376, 25 L.Ed.2d 368, 90 S.Ct. 1068 (Burger, C.J., dissenting).

Not only are the interests underlying Winship implicated to a greater degree in this case, but in one respect the protection afforded by those interests is less here.  In Winship the ultimate burden of persuasion remained with the prosecution, although the standard had been reduced to proof by a fair preponderance of the evidence.  In this case, by contrast, the judge made findings totally eliminated the jury, shifting the burden of proof to Movant at sentencing absent a grand jury charge or admitted by the Movant in the plea. The result, in a case such as this one where Movant is required to proof facts (not charged in the indictment)   in

---

1/
  See Duncan v. Louisiana, 391 U.S. 145, 160, 20 L.ed.2d 491, 88 S.Ct. 1444 (1968); "The penalty authorized by the law of the locality 'may be taken as gauge of its social and ethical judgments.'" Quoting from District of Columbia v. Calwans, 300 U.S. 617, 628, 81 L.Ed. 843, 57 S.Ct. 660 (1937).

dispute, is to increase further the likelihood of an erroneous conviction as is the case here. Such a result directly contravenes the principle articulated in Speiser v. Randall, 357 U.S. 513 (1958), and In re Winship, 397 U.S. at370-372.

The consequences of a violation of the standard of proof beyond a reasonable doubt such as the one here requires application of the protections afforded by the Court's opinion in In re Winship (i.e. aanounced to be retroactively applicable months after the decision). Because Booker relies in In re Winship for its reaffirmation of the standard of proof beyond a reasonable doubt, it would be inconsistent with the Court's intentions in In re Winship not to hold Booker retroactively applicable to cases on collateral review, when in fact, the Court held In re Winship applicable to cases on collateral review. See Brown v. Louisiana, 447 U.S. 323, 65 L.Ed.2d 159 (1980), holding that the constitutional rule that the concurrence of six jurors is constitutionally required to preserve the substance of the jury trial right and assure the reliability of its verdict is entitle to fully retroactive effect.

7. **The Supreme Court Has Consistently Ruled that Cases Wherein, The Court's Ruling is Intended to Preserve The Integrity of the Trial Process Are to be Held Retroactive.**

Burden of Proof:

The Supreme Court, in the following cases, has granted retroactive effect to its rules involving the burden of proof.

-26-

In <u>Hankerson v. North Carolina</u>, 482 U.S. 233, 53 L.Ed.2d 306, 97 S.Ct 2399, the Court held that the rule of <u>Mullaney v. Willbur</u>, 421 U.S. 684, 44 L.Ed.2d 508, 95 S.Ct 1881 (1975), which invalidated, as violative of the due process clause of the Fourteenth Amendment, presumtions shifting the burden of proof concerning elements of a criminal offense to the defendant and which require a state to establish all such elements beyond a reasonable doubt, is retroactively applicable to trial completed before the date on which the <u>Mullaney</u> decision was rendered. The Court said that it had never deviated from the rule that where the major purpose of new constitutional doctrine is to overcome an aspect of the criminal trial that substantially impairs the truthfinding function and so raises serious questions as to the accuracy of guilty verdicts in past trials, the new rule is given complete retroactive effect. The reasonable doubt standard of proof involve in this case, the Court went on, is substantial a requirement under <u>Mullaney</u> as it was in previous decisions by the court.

In <u>Ivan V. v. New York</u>, 407 U.S. 203, 32 L.Ed.2d 659, 92 S.Ct 1951 (1972), the Court held that its rule that proof beyond a reasonable doubt is among the essential of due process and fair treatment that must be afforded at the adjudicatory stage when a juvenile is charged with an act that would constitute a crime if committed by an adult (i.e. the rule was announced in <u>In re Winship</u>) is to be given complete retroactive effect. The

-27-

Court explained that the reasonable doubt standard provides substance for the presumption of innocence and that since due process commands that no man shall loose his liberty unless the government has borne the burden of convincing the fact finder of his guilt, the reasonable doubt standard is indispensable for, the court added, it impresses on the trier of fact the necessity of reaching a subjective state of certitude of the facts in issue. The Court further stated that the major purpose of the constitutional standard of proof beyond a reasonable doubt was intended to overcome an aspect of a criminal trial that substantially impaired the truth-finding function.

In the case at bar, Movant's sentence enhancement for possession of a firearm under U.S.S.G. 2D1.1 clearly violates the standard of proof beyond a reasonable doubt, and thus, Movant is presently serving an unconstitutional sentence, which necessitates vacating.


## CONCLUSION

Movant respectfully submits that based on the foregoing his §2255 motion should be granted in specific his sentence enhancement under U.S.S.G. §2D1.1 necessitates vacating.


September 26, 2005                    Respectfully submitted,

                                     Robert H. Rush, Jr., pro se.

-28-

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing legal instrument was served on this 26th day of September, 2005, to:  United States attorney's Office, Tommie Brown Hardwick, AUSA, Post Office Box 197, Montgomery, AL  36101-0197.  The service was conducted via first class mail by depositing the foregoing in the F.P.C. Montgomery (i.e. prison0 mail box designated for "Legal Mail only".  this Certificate of Service is submitted under 28 U.S.C. §1746.

Robert  H,  Rush,  Jr., /pro  se.

-27-